**FILED**
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

Page 1 of 2015

JAMES W. McCORMACK, CLERK
By:_____
DEP CLERK

EAST. ...

2015 JUL 30

Aur

BY:____

# UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF ARKANSAS
### ~~LITTLE ROCK DIVISION~~

**DAVID A. STEBBINS**                                        **PLAINTIFF**

**VS**                          **CASE NO. 4:15CV0036 JLH**

**JIMM HANNAH, DONNA GAY, STATE OF
ARKANSAS, ~~ARKANSAS ADMINISTRATIVE~~
OFFICE OF THE COURTS, RUSSELL ROGERS,**                 **DEFENDANTS**
**DAVID D. STEBBINS, JAMES GOLDIE,
~~KRISTIE WILLIAMS, AND GORDON WEBB~~**

## AMENDED COMPLAINT AND JURY DEMAND

Comes now, *pro se* Plaintiff David Stebbins, who hereby submits the following

Complaint against the above-mentioned persons.

1.      Plaintiff will attempt to repeat everything in the original complaint, but to extent he does

not, the contents of the original complaint are hereby incorporated by reference. For the most

part, each section and sub-section in this Amended Complaint, to the extent it discusses things

discussed in the Original Complaint. Thus, if you begin reading a sub-section and realize that it

discusses the same thing as previously discussed in the Original Complaint, you can go ahead

and skip tot he next sub-section. That way, you can review this Amended Complaint faster.

2.      Plaintiff alleges fourteen (14) causes of action: First, an act of unlawful retaliation in

violation of Section 503 of the Americans with Disabilities Act. Second, an act of unlawful

discrimination in violation of Title II of the Americans with Disabilities Act. Third and fourth,

invoking the federal court's supplemental jurisdiction, Plaintiff is suing Russel Rogers, in his

*personal* capacity (as opposed to his judicial capacity) for the common law torts of malicious

prosecution and defamation. Fifth, that James E. Goldie (acting as counsel for David D.

Stebbins) corroborated with Russell Rogers behind Plaintiff's back in order to rig the outcome of

our state court case in their favor, thus violating Plaintiff's constitutional right to an impartial judiciary[1]. Sixth, Plaintiff sues Gordon Webb (the only person who was not a Defendant in the original complaint in this case) for taking an act in his administrative capacity to restrict Plaintiff's free speech and petition rights.

3.     Also, since Goldie and David D. Stebbins are both listed as Defendants, we might as well bring all possible causes of action against those two.  Therefore, invoking this Court's supplemental jurisdiciton, Plaintiff sues Goldie and David D. Stebbins for two (2) counts of perjury, and David D. Stebbins for five (5) additional of perjury (and yes, that is a perfectly valid *civil* cause of action, under Arkansas state[2] law; see Section II, Sub-Section 10 of this Complaint, for details), as well as for one (1) count of tampering with physical evidence.

### SECTION I: FACTUAL ALLEGATIONS

#### Sub-Section 1: Plaintiff's Litigation History

4.     Plaintiff – a resident oft he city of Harrison, Arkansas and of Boone County, Arkansas – has Asperger Syndrome, a disability which severely hinders his ability to socialize with others, make friends, get jobs, get a girlfriend, etc.

5.     Because this disability is not obvious (like blindness or paraplegia), many persons do not realize that it even IS a disability, and thus, they believe that they have no obligation under the Americans with Disabilities Act to provide reasonable accommodations for it. This leads to many times when Plaintiffdoes not get the reasonable accommodations he is supposed to be legally entitled to. Thus, Plaintiffwas faced, many many times, with two options: Either suck it up and let people do whatever they want to him and walk all over him, or file suit in federal court. Plaintiff quickly decided that the former was 100% out ofthe question.

---

1   Russell Rogers and the State of arkansas NOT Defendants in that cause of action, because of Judicial and 11ᵗʰ Amendment immromiuos, respectively  They are only listed because of the ADA retaliation, for which there is no immunity, see Tennessee v. Lane, 541 US 509 (2004).

2   Because remember: This is SUPPLEMENTAL jurisdiction.

6.     Plaintiff could not afford to hire an attorney on an hourly basis, and because
discrimination is an extremely complication area of law (indeed, the Defendant's mindset is an
essential element), it is extremely rare for an attorney to take a case on contingency, especially
when the Defendants in those cases honestly believe that they were doing nothing wrong.

7.     Thus, Plaintiff had no choice but to represent himself *pro se* in these matters.

8.     A list of the ADA cases where Plaintiff represented himself are ...

   (a)     Case No. 10-3305 in the U.S. District Court for the Western District of Missouri;

   (b)     Case No. 10-3041 in the U. S. District Court for the Western Distria of Arkansas;

   (c)     Case No. 10-5025 in the U.S. District Court for the Western District of Arkansas;

   (d)     Case No. 10-3086 in the U.S. District Court for the Western District of Arkansas;

   (e)     Case No. 10-3072 in the U. S. District Court for the Western District of Arkansas;

   Case No. 11-3078 in the U.S. District Court for the Western District of Arkansas;

   (f)     Case No. 11-3057 in the U.S. District Court for the Western District of Arkansas;

### Sub-Section 2: The Adverse Action from James E. Goldie

9.     Plaintiff was suing David D. Stebbins in the Boone County Circuit Court for six torts,
including, but not limited to, malicious prosecution, for making up evidence of a knife attack in
order to have Plaintiff arrested, so he would not go to jail himself for punching Plaintiff in the
face.

10.     During these proceedings, the Defense Attorney – one James E. Goldie by name – filed a
Motion to Dismiss Plaintiff's Complaint, on the grounds that Plaintiff had filed multiple lawsuits
in the past, and therefore, Plaintiff should not enjoy the constitutional right to court access.

11.     It was until April 23, 2015, when Plaintiff ultimately lost his case, that Plaintiff actually
suffered damages as a result of this adverse action.

### Sub-Section 3: The Numerous Adverse Actions from Russel Rogers

12. Russel Rogers was appointed as a special judge in the state court action on October 7, 2014. He was appointed by co-Defendants Jim Hannah (in his official capacity as Director of the Arkansas Administrative Office of the Courts). Since then, Donna Gay has freely admitted that she (and, by proxy, the entire Administrative Office of the Courts) does absolutely nothing to ensure that the judges they assign are qualified, in any way.

13. Since being assigned, Russel Rogers made his disdain for Plaintiff clear. He issued a variety of adverse rulings that, in most circumstances, would be protected by judicial immunity. In the original complaint, Plaintiff listed, as bullet points, a variety of ridiculous adverse actions; the contents of that Original Complaint are hereby incorporated by reference.

14. *HOWEVER, PLAINTIFF DOES FEEL THE NEED TO REITERATE THIS BIT: THIS CASE IS NOT ABOUT WHETHER THE SPECIAL JUDGE ACTED APPROPRIAT- ELY, BUT RATHER, WHETHER THE TWO DEFENDANTS ACTED UNLAWFULLY IN FAILING TO ASSIGN A JUDGE WHO WOULD ACT APPROPRIATELY. WHETHER PLAINTIFF WAS, IN FACT, INJURED BY THERI FAILURE IS A QUESTION OF FACT, NOT A QUESTION OF LAW. THEREFORE, THIS COURT NEED NOT CONDUCT ANY ANALYSIS INTO STATE LAW; THAT WILL BE THE JURY'S DECISION.*

15. As you can clearly see, Plaintiff has suffered numerous adverse actions. Thus, if these adverse actions can be shown to have been caused, at least in part, by Plaintiff's ADA litigation history, then they amount to unlawful retaliation in violation of Section 503 of the Americans with Disabilities Act.

### Sub-Section 3: Perjury No. 1 (Lying about lack of memory of night of arrest)

16. During the discovery of the state court action, Plaintiff submitted a request for admissions

to James E. Goldie, in his official capacity as defense counsel for David D. Stebbins. This interrogatory asked David D. Stebbins to admit to the precise chronological order of events that happened the night Plaintiff was arrested.

17.     This was material to the proceedings at the time because, at the time, the special judge had not *sua sponte* dismissed Plaintiff's malicious prosecution claim (see , and the precise chronological order of the events surrounding Plaintiff's arrest was relevant to proving lack of probable cause[3].

18.     Goldie, answering on behalf of David D. Stebbins, simply replied and stated "Defendant cannot state the exact order of events."

19.     Plaintiff simultaneously served the Defendant with an Interrogatory, asking the Defendant to state, under oath, which of his answer to the request for admissions were true. This was designed to ensure that his answers were given under penalty of perjury. Goldie – acting on behalf of David D. Stebbins – replied and stated "all responses are true."

20.     However, when the jury trial actually got underway, the Defendant testified and stated the exact order of events, precisely as Plaintiff asked the Defendant to admit in the request for admissions, creating an inconsistency with his previous, under-oath response to his interrogatory.

### Sub-Section 4: Perjury No. 2 (Lying about Plaintiff's bargaining power)

21.     In addition to malicious prosecution, Plaintiff was suing David D. Stebbins for breach of contract. He asked the David D. Stebbins, on two separate occassions during discovery, to admit that Plaintiff had no bargaining power to negotiate the terms of the contract, and had no choice but to accept David D. Stebbins' terms. This was done to prove that the contract was unconscionable, and thus, should have been voidable in Plaintiff's favor.

---

3   See Kuehl v. Burtis, 173 F. 3d 646, 650 (8ᵗʰ Cir. 1999): "[L]aw enforcement officers have a duty to conduct a reasonably thorough investigation prior to arresting a suspect, at least in the absence of exigent circumstances and so long as 'law enforcement would not [be] unduly hampered ... if the agents ... wait to obtain more facts before seeking to arrest.'"

22.     On both occasions, Goldie (acting on behalf of David D. Stebbins) stated that Plaintiff had bargaining power. On the second time, Plaintiff asked the Defendant to justify his answer by stating what "meaningful alternatives" Plaintiff had (by using the exact phrase "meaningful alternative," Plaintiff was in the hopes that he could put the two on notice that he was asking them to refute a presumption of unconscionability). Goldie – acting on behalf of David D. Stebbins – simply said "Plaintiff did not have to accept any contract or could have sought another contract."

23.     However, both of these statements were contradicted by David D. Stebbins' own testimony at the jury trial, where he freely admitted that Plaintiff was faced with a choice between accepting David D. Stebbins' extremely one-sided terms, or being literally homeless.

24.     This means that, by David D. Stebbins' own admission, his two previous discovery responses were lies.

### Sub-Section 5: Perjury Nos. 3, 4, & 5

25.     Plaintiff is aware that, in 2006, David D. Stebbins had his driver's license revoked pursuant to a DUI charge. To get his driver's license back, the Defendant was ordered to attend an Alcoholics Anonymosu (or AA for short) session.

26.     Plaintiff is also aware that the Defendant never attended this session, instead opting to drive his own vehicle, anyway, even without a driver's license. Plaintiff knows this because David D. Stebbins often gloats about how he "doesn't need" the AA session, since he "already learned his lesson."

27.     Plaintiff attempted to draw attention to that, during the jury trial, since it was relevant, under Arkansas Rule of Evidence #406 to show that David D. Stebbins considered himself above the law.

28.     However, when the jury trial got underway, David D. Stebbins made the following
statements, under penalty of perjury:

(a)     He does not drive (specifically because he has no license), and

(b)     He attended the AA session, but

(c)     He still does not have a driver's license because it costs too much to renew.

29.     All three of these statements were bald-faced lies, done to cover the fact he considers
himself above the law. He does indeed drive himself on a regular basis; he never attended the
court-mandated AA session BECAUSE he did not believe he deserved to have to go, and the
reason he never renewed his driver's license is not because he cannot afford to do so (it would
only cost twenty bucks), but because he knew they would not give it to him without a certificate
of completion from said AA session, which he had no intention of attending.

### Sub-Section 6: Perjury Nos. 6 & 7 (David D. Stebbins' perjury about his drinking habits & the speed at which alcohol leaves the human body)

30.     During the jury trial, Plaintiff attempted to use David D. Stebbins' drinking habits to
show that the Defendant was intoxicated at the time of the altercation that resulted in Plaintiff's
arrest.

31.     The Defendant affirmatively denied that he was intoxicated. However, to support this
denial, he said the following two things:

(a)     He only drinks about four 12oz cans of beer per day, and

(b)     Beer exists the human body at a rate of 2 "beers[4]" per hour, that this is a flat rate,
independent of gender, body size, or anything else that is specific to the individual. To
support this pseudo-science, he said that he learned this at his AA session.

32.     The second one is already a lie. First of all, as stated before, he never attended the AA

---

4   Plaintiff assumes that, by "beer," David D. Stebbins was referring to a standard 12oz can of beer.

session. However, even if we were to believe him on that count, it is still completely ludicrous to think that alcohol exits all human bodies at the same rate.

33.    However, the statement made in ¶ 30(a) also contradicts a statement the Defendant made only a few minutes later: When asked exactly how much alcohol he *purchases* (since it would go without saying that he *consumes* that much alcohol), he said it was "two cases per week." When asked how many beer cans were in a case, he replied "thirty." This meant that he purchases (and, by proxy, consumes) sixty (60) cans of beer per week. This comes out to a little bit more than eight (8) cans per day, because 56 cans per week would be exactly 8 cans per day.

34.    This is an enormous inconsistency, since no matter how long it takes for alcohol to leave *his* body, he would stay intoxicated for twice as long, after drinking eight cans of beer, than if he only drank four, significantly decreasing the likelihood that he would have sobered up by the time the altercation happened that resulted in Plaintiff's arrest.

## Sub-Section 7: The Judicial Remarks showing ADA Retaliation

35.    On May 22, 2015, after the jury had entered its verdict, Plaintiff filed, in his state court action, a "Motion for Judgment NOV or in the Alternative for New Trial." As this Court may have guessed, that motion was denied. Specifically, it was denied on June 8, 2015. However, when issuing his advisory opinion, Special Judge Russel Rogers made the following comments about Plaintiff: "Mr. Stebbins uses his medical condition, if such truly exists, as a weapon ... I believe him to be not just a nuisance but, far more importantly, a danger to himself and to others."

36.    The "medical condition" Rogers was referring to was Plaintiff's Asperger Syndrome, which is what sparked Plaintiff's large *number* of otherwise legitimate and good-faith lawsuits (see ¶ 8 of this Complaint, and all the previous pleadings that it incorporates). However, although

he made clear his reasons for why he felt Plaintiff was a "nuisance," his accusation that Plaintiff was "a danger to himself and to others" came entirely out of nowhere, without any factual basis, whatsoever (with or without evidence).

37.    On June 11, 2015, Plaintiff filed a "Second Motion for New Trial and to Recuse," pointing out to Rogers that Plaintiff has the *absolute right* to an impartial judiciary (see Tumey v. Ohio, 273 US 510, 535 (1927), upholding this right "[n]o matter what the evidence was against him"). Of course, this Motion is just going to be denied. The only thing that remains to be seen is ... what contrived excuse will the special judge give for denying the motion? Or, will he give any at all? Maybe his order will simply be a single sentence: "The Plaintiff's Second Motion for New Trial and to Recuse is denied."

38.    Plaintiff will also be filing an appeal in that case. However, the Appellate Court is just going to affirm the decision. Why? Because Plaintiff is a poopyhead who doesn't deserve justice. They will find some excuse – no matter how contrived – to justify affirming the decision. Maybe they will say that Plaintiff has not shown how any of the judge's errors had any impact on his case (which, if they say that, it would be a complete lie, because Plaintiff does indeed plan on including that argument in each section of his Briefing). Maybe they won't even ATTEMPT to justify why they affirm the decision; they will probably just issue a single sentence saying "We find no grounds for reversible error and affirm," and nothing else beyond that. Simply because they can.

39.    In any case, as the upcoming legal argument will show, the recent developments in the current case authorize this Court to issue relief to the Plaintiff, so Plaintiff does not have to resort to the state appellate courts.

**Sub-Section 8: Additional evidence of *ex parte* communications**

40.     The contents of Plaintiff's original Complaint are hereby incorporated by reference.

However, since mailing that Complaint, new developments have happened which provide

additional evidence to support Plaintiff's claim.

41.     On June 18, 2015, Plaintiff sent an email to Rogers and Goldie, explaining to them what

he explained in his Original Complaint (about how the only reason they possibly would have met

up was to discuss the case because they had nothing else to talk about), and demanding an

explanation when Rogers issued his order on Plaintiff's Second Motion for New Trial and to

Recuse.

42.     On Jun 26, 2015, Russel Rogers issued an advisory letter, showing several *ex parte*

communications besides these. Almost all of these emails between Goldie and Rogers were

directly addressing the merits of the case, and yet, Plaintiff had previously received copies of

NONE of these. Just a handful of quotes from these emails which show them directly addressing

the merits of the state court case:

(a)     "I just got the letter yesterday. I then contacted the Clerk as to the jury costs. The

clerk was not available both yesterday and today. I cannot do the impossible." Offered as an

excuse as to why he did not fulfill his obligations in a timely manner. Thus, it is merits-

related.

(b)     "Unfortunately, the Plaintiff does not realize that the judge is not an 'officer' under the

terms of the Webb Order and the statute that allows attorney fees in contract cas4s1 cannot be

waived in advance by Judge Webb." Clearly providing a counter-argument to the merits of

Plaintiff's "Response To Motion And Brief On Juror Compensation And Court Reporter

Charge," filed on May 28, 2015 at 1:03PM.

(c)      "Of course that means police officers and not the Judge. Also, Judge Webb cannot in advance waive any attorney fees that the statute on contracts allows." Again, arguing against the merits of Plaintiff's on-record response.

43.      So before, Plaintiff was merely speculating that Goldie's discussions with Williams (and, by proxy, with Judge Rogers) were case-related; now we KNOW they were case-related, and thus, a patent violation of Plaintiff's absolute right to an impartial judiciary.

44.      One July 6, 2015, Plaintiff received a copy of an order recusing himself from the proceedings. This means that he *admits* that the issue of *ex parte* contacts (and the potential that it might have impaired his judgment) has merit. However, he chose not to rule on Plaintiff's Second Motion for New Trial. Instead, he chose to defer the motion to the succeeding judge.

45.      Only problem is ... the Motion had to get a ruling by July 10, 2015, otherwise, it is denied by default. See Ark.R.Civ.P. 59(b) "If the court neither grants nor denies the motion within 30 days of the date on which it is filed or treated as filed, it shall be deemed denied as of the 30th day." So, even when he is admitting that Plaintiff got a raw deal, he is still using his self-admitted hatred of Plaintiff to screw him over. He has found a loophole so that the prejudicial judgment still remains on the record, while he technically gets to wash his hands of the matter.

46.      Under most circumstances, this would be considered clever, because judicial immunity would protect him. However, since his search for the loophole was *fueled* by his hatred towards Plaintiff, and said hatred was, by proxy, fueled by at least one of Plaintiff's statutorily protected activities, that means that the *search* for the loophole was an unlawful act of retaliation (for which there is no judicial immunity), even if the loophole itself was not illegal in and of itself.

## Sub-Section 9: Destruction of Evidence

47.      In his June 26 email, Rogers did not produce the emails that were actually spoken of in

the June 19, 2015-dated letter from Goldie (you know … where he tried to explain how he knew what Rogers knew without admitting to ex parte communications). Rogers said that this email was "unavailable."

48.    In other words … it was deleted.

49.    It could not possibly have simply been overritten automatically to make space. Williams has a Gmail email account. Even the free account from gmail allows storage space up to 50GB. If you know anything about computers, you know that this means she would have to send and/or received at least 2,000 emails (and that's *assuming* that each email contained the maximum-allotted 25MB attachments) before the account would have to automatically delete emails to make room. The odds that she could blow through such a high quota in only a few months is astronomical; to achieve that, her entire 40-hour-a-week job would have to be nothing but sending outing and reading incoming email, without any time spent doing actual *secretary* work.

50.    No, she *deleted* it, most likely in the hopes that Plaintiff wouldn't be able to use it as evidence. Fortunately, Plaintiff already has plenty of evidence of ex parte communications (as demonstrated in ¶¶ 60 & 61 of this Complaint), and besides, Goldie has already issued a written confession to this email.

51.    However, she still deleted it. She deserves to be punished as a matter of principle.

### Sub-Section 10: Rogers' Attempt to Have Plaintiff Committed, and additional acts of discrimination on basis of perceived disability.

52.    On July 7, 2015, Plaintiff received, by regular mail, a letter from Russel Rogers. In this letter, he gave even more hate-filled remarks about Plaintiff, including the following paragraph:

"The Plaintiff is suffering from a condition that I believe (from over 40 years of dealing with disturbed people) is more serious than Aspergers alone. He is most likely homicidal, is definitely suicidal, as well as paranoid and delusional. I am therefore sending a copy of this to the prosecuting attorney and to the Department

of Human Services. I have been tempted to declare Mr. Stebbins incompetent on my own notion but believe that it is best to refer it to the proper authorities in Boone County."

53.     So, what we have here is Russel Rogers, by his own admission, issuing adverse rulings and denying Plaintiff justice, by reason of his belief that Plaintiff has a disability, and he isn't even PRETENDING like it's more than that.

54.     He also has stated that he is forwarding a copy of these accusations to the prosecuting attorney for the Fourteenth Judicial Circuit of the State of Arkansas, as well as the Arkansas Department of Human Services. His goal, undoubtedly, was to have Plaintiff "declared incompetent" and to have him committed in the State Hospital. It is this action – the forwarding of these accusations to the prosecutor with hopes of having Plaintiff committed – that form the basis of Plaintiff's common law malicious prosecution charge.

55.     Plaintiff will, in all likelihood, suffer an increase in government surveillance as a result of this accusation. They can't do anything yet, but they will certainly be monitoring Plaintiff in light of these accusations.

### Sub-Section 10: Gordon Webb's First Amendment Censorship

56.     On July 20, 2015, Gordon Webb – who had already recused himself from this case, mind you – had filed an order in the state case (claiming to be acting as administrative judge of the Fourteenth Judicial Circuit), ordering that the case was closed and that no party was to file anything further in the case except as it directly related to appeal.

57.     That was fine. Plaintiff is not suing for that. What he *is* suing for is another mandate made in the same order: Plaintiff was not allowed to even so much as *discuss* the case with any court staff, using ANY means of communication, including writing for a newspaper or blogging over the Internet to vent about the government corruption!

58.    That is NOT a legitimate exercise of his authority to control the court's docket. To the contrary, it seems that he is simply trying to shoe Plaintiff out because he finds Plaintiff to be annoying. Credence is lent to this by the fact that Gordon Webb, in issuing that order, accused Plaintiff of *harassing* the Court ... something Plaintiff has absolutely NOT done! There is a difference between a person harassing another person, and the second person simply being annoyed by the first person's otherwise perfectly lawful behavior. This is a case of the latter, and Gordon Webb is intentionally restricting Plaintiff's rights under the Free Speech and Petition Clauses of the 1st Amendment, simply because he does not like Plaintiff.

## SECTION II:  LAW AND DISCUSSION

59.    The following law governs the underlying causes of action:

### Sub-Section 1: ADA Retaliation by Rogers, Hannah, Gay, and the State of Arkansas

60.    To support a claim of ADA Retaliation, Plaintiff must prove three essential elements: (1) That Plaintiff engaged in statutorily protected activity, (2) that Plaintiff suffered an adverse action from the Defendant(s), and (3) the adverse action was motivated, at least in part, by the statutorily protected activities. See *Amir v. St. Louis University*, 184 F.3d 1017 (1999).

61.    Plaintiff has sufficiently plead the first element in Section I, Sub-Section 1 this Complaint.

62.    Plaintiff has sufficiently plead the element of "adverse action" in Section I, Sub-Section 3 of this Complaint. Specifically, the adverse action was "loss of court access" for most claims, and "deprivation of absolute right to impartial judiciary" for the rest.

63.    Did Plaintiff forget to mention that JUDICIAL IMPARTIALITY IS AN ABSOLUTE RIGHT!!!

64.    Therefore, Plaintiff absolutely has alleged the essential element of "adverse action."

65. The element of "causal connection," insofar as it concerns Russel Rogers and the State of Arkansas, has been admitted to, as set forth in Section I, Sub-Section 7 of this Complaint. There is nothing to prove, here.

66. The element of "causal connection," insofar as it concerns Jim Goldie and David D. Stebbins, is sufficiently plead in Section I, Sub-Section 2 of this Complaint. Although the Defendants swear that the adverse action was caused by Plaintiff's own knife attack, bear in mind that, for purposes of a Complaint, Plaintiff's allegations must be assumed as true.

67. This leaves us with only one question: Does the Plaintiff actually use his Asperger Syndrome as a "weapon," as Russel Rogers suggests?

68. Plaintiff denies that. In fact, he maintains that every single lawsuit he has ever filed – ADA or otherwise – has been in good faith. However, even if Rogers could somehow show evidence that Plaintiff was milking his status as a disabled person, it still would not be legally material, pursuant to the precedent of *Shaver v. Independent Stave Co.*, 350 F. 3d 716 (8th Cir. 2003), which was cited in the original complaint.

69. Thus, Rogers (and, by proxy, the State of Arkansas) has given Plaintiff, on a silver platter, a *prima facie* case for retaliation, and has attempted to allege a completely non-existent affirmative defense to his conduct. What more do you need?

70. Plaintiff's litigation history may or may not have been primary factor in Rogers' rulings, and it may or may not have been a factor in every one of his rulings. That is not relevant. What matters is that, by Rogers' own admission …

- … at least one of Plaintiff's statutorily protected activities …
- … played, for even one single solitary second …
- … at least a 0.000000000000000000000001% role …
- … directly or indirectly, consciously or sub-consciously …
- … in anything Rogers did …

- ... that was adverse to the Plaintiff.

71. Therefore, the retaliation was unlawful. It is not necessary that the statutorily protected activity be the "sole" motivating factor; as long as it plays even the most miniscule of roles in anything a retaliator does, it's recoverable.

72. Nor is it required that the adverse action be intentional (even though, in this case, it was).

73. The only question that remains is the *extent* of damages, not whether Rogers committed retaliation in the first instance; therefore, litigation is required and pre-discovery dismissal is not warranted.

74. Rogers was appointed by Donna Gay and Jim Hannah, acting on behalf of the Administrative Office of the Courts, an arm of the State of Arkansas. As a result of this, those four Defendants are jointly liable, because they appointed the rogue judge.

### Sub-Section 2: ADA Discrimination

75. In addition to his accusation that Plaintiff "uses his medical condition, if such truly exists, as a weapon," he has also stated that he believes Plaintiff to suffer from something "far more serious than Aspergers alone." This satisfies the first essential element of ADA Discrimination: A person is deemed "disabled" within the definition of the Americans with Disabilities Act if the alleged discriminator BELIEVES him to have a physical or mental impairment that substantially hinders one or more major life activities, regardless of whether the Plaintiff indeed has such an impairment. See 42 USC § 12102(1)(C) & 42 USC § 12102(3).

76. The element of "adverse action" can be judicially noticed.

77. Rogers has ADMITTED that his belief that Plaintiff has this impairment (although he, not surprisingly, has not been able to tell us what this alleged mental condition is *called*) has formed the basis of his adverse rulings. Therefore, the essential element of "causal connection" is

pending. He issued this confession, most likely in the belief that he would enjoy judicial
immunity. But the joke is on him, because as we are soon to cover, immunity has been taken
away from an Act of Congress, even against the Courts!

### Sub-Section 3: Lack of Immunity for ADA Discrimination & Retaliation

78.     It is important to understand that there is no immunity for ADA Retaliation. See 42 USC
§ 12202. This abrogation of immunity has been upheld by the U.S. Supreme Court as not being
unconstitutional, even when they involve Courts. See *Tennessee v. Lane*, 541 US 509 (2004).

79.     Since there is no immunity for courts, it is safe to assume that there is no immunity for
Court *officers*, either.

80.     Therefore, neither the State of Arkansas, nor Russel Rogers, enjoy any immunity,
whatsoever, for their retaliation or their discrimination.

### Sub-Section 4: The "direct threat" defense.

81.     Russel Rogers has alleged that Plaintiff is homicidal. This accusation, if true, would
justify his discrimination on the grounds of the "direct threat" defense. However, Plaintiff is *still*
pushing this claim, for the following reasons:

82.     First, the mere *belief* that a person poses a direct threat is not, by itself, sufficient to
support the "direct threat" defense. The threat must be actual, real, and tangible. See *School Bd.
of Nassau Cty. v. Arline*, 480 US 273 (1987). See also *Gorman v. Bartch*, 152 F.3d 907, 912 (8th
Cir. 1998) (holding ADA and Rehabilitation Act case law as interchangeable, thus making the
*Arline* precedent applicable in this case).

83.     See also *EEOC v. Wal-Mart Stores, Inc.*, 477 F. 3d 561, 572 (8th Cir. 2007):

> "The Supreme Court requires an individualized direct threat analysis that relies on
> the best current medical or other objective evidence in order to protect disabled
> individuals from discrimination based on prejudice, stereotypes, or unfounded

fear. Specific factors to be considered include (1) the duration of risk, (2) the
nature and severity of the potential harm, (3) the likelihood that the potential harm
will occur, and (4) the imminence of the potential harm."
(citations and quotations omitted)

84.    In addition, Russel Rogers is going to hold the burden of proof on this mater. See *EEOC
v. Wal-Mart*, supra at 572 ("[W]e now hold that the [defendant] bears the burden of proof, as the
direct threat defense is an affirmative defense"). Therefore, even if Plaintiff did NOT already
have evidence lined up and ready to go to disprove this accusation (which he does; see ¶ 112(a)
of this Complaint), Rogers would still have an uphill battle to climb in justifying the "direct
threat" defense. After all, even if he has Plaintiff attend a mental health examination pursuant to
Fed.R.Civ.P. 35, and Plaintiff gets diagnosed with some mental disorder that would make him
homicidal (such as Antisocial Personality Disorder), that would not retroactively justify his
discrimination, since he did not have that evidence at the time the discriminatory act occurred.  It
is a matter of common sense that a discriminatory act cannot be motivated by knowledge the
discriminator did not have access to until after the discriminatory act; see *Shaver*, supra at 724
(quoting a New York case, and referring to this logic as a "straightforward point").

85.    Remember that, when reviewing a Complaint for failure to state a claim, the Court must
accept as true all factual allegations, and view them in a light most favorable to the Plaintiff.
Dismissal for failure to state a claim can indeed be warrented if the Complaint gives an
affirmative defense on its face, but Plaintiff has NOT done that, as explained by this sub-section.
Therefore, Plaintiff is entitled to have his *in forma pauperis* application granted and is entitled to
proceed on this matter.

### Sub-Section 5: The Substantial Difference With Previous Case

86.    The factual allegations contained in Section I, Sub-Section 3 of this Complaint bear

substantial similarities with Case No. 15-0332 of this Court. Let the Court be well aware that this is NOT the same case!

87.     The Court dismissed that case on the grounds that unintentional acts cannot form the basis of a § 1983 claim. Well, this time around, it is not a § 1983 claim; it is an ADA Retaliation claim; the grounds upon which the previous case was dismissed are moot, here. For an ADA Retaliation claim, a lack of discriminatory intent would, at best, be a bar to monetary damages, not a bar to liability in the first instance. See *Meagley v. City of Little Rock*, 639 F. 3d 384 (8th Cir. 2011).

88.     Plaintiff has a Motion for Reconsideration pending in that case. If that Motion is granted, Plaintiff would have no objections to merging that case with this one. But for purposes of getting *this* case in the door, Plaintiff has alleged sufficient facts.

### Sub-Section 6: Rogers' Personal-Capacity Malicious Prosecution & Defamation

89.     Rogers claimed that he was submitting a copy of these accusations to the prosecutor and Department of Human Services in hopes of having Plaintiff committed to an asylum. This is not an act "normally performed by a judge;" to the contrary, anybody can do that, as it is part of the First Amendment right to petition the government for a redress of grievances. Thus, it does not fall within the definition of a "judicial act," as defined by the precedent of *Stump v. Sparkman*, 435 US 349, 362 (1978). As a result, Russel Rogers has no judicial immunity in the first instance. It is not merely taken away, or waived; he never had it to begin with.

90.     To state a claim for malicious prosecution, Plaintiff must allege (and then, as the case progresses, subsequently prove) the following essential elements: (1) a proceeding instituted or continued by the defendant against the plaintiff; (2) termination of the proceeding in favor of the plaintiff; (3) absence of probable cause for the proceeding; (4) malice on the part of the

defendant, and (5) damages. See *Bank of Eureka Springs v. Evans*, 109 SW 3d 672, 690 (2003).

91.     Russel Rogers has contacted the prosecutor in the hopes of having Plaintiff committed. This satisfies the first essential element.

92.     The essential element of "absence of probable cause" is satisfied in two ways, either one of which are singlehandedly sufficient to satisfy this element:

(a)     First, the underlying *facts* are total nonsense. He has no evidence to support his accusation that Plaintiff is mentally incompetent, and certainly no evidence to support his ridiculous accusations that Plaintiff is "homicidal," "paranoid," or "delusional." Besides, Plaintiff has already been through a mental diagnosis, once already, in connection with a previous criminal charge, and in it, Plaintiff was, indeed, diagnosed as mentally competent. So, the charges are patently false, as a matter of fact. What's even worse is the fact that Russel Rogers was actually *made privy* to this diagnosis (because remember from the bullet points between ¶¶ 12 & 13: Plaintiff introduced a copy of that diagnosis as an exhibit at trial), and so Rogers loses probable cause pursuant to the precedent of *Kuehl v. Burtis*, 173 F. 3d 646, 650 (8th Cir. 1999)[5].

(b)     Second, even if the factual allegations are true (which they are not), there is still no grounds to subject Plaintiff to incarceration – prison or asylum alike – until he actually *does* something illegal. See *Robinson v. California*, 370 US 660 (1962) (holding a California law as unconstitutional when it bans the crime of *being* a narcotics addict, without regard to actual narcotics *use*, stating that "Even one day in prison would be a cruel and unusual punishment for the 'crime' of having a common cold" *id* at 667). Thus, probable cause is absent because no reasonable person would believe that a person has *done* something illegal,

_____

5     "because the totality of circumstances determines the existence of probable cause, evidence that tends to negate the possibility that a suspect has committed a crime is relevant to whether the officer has probable cause. An officer ... is not free to disregard plainly exculpatory evidence, even if substantial inculpatory evidence (standing by itself) suggests that probable cause exists"

simply by nature of *having* a mental health issue.

93.     It appears very unlikely that Plaintiff will be charged with anything, for the reasons set
forth in ¶ 112(b). Therefore, the second essential element has been sufficiently plead.

94.     Russel Rogers has made his malice apparent from Day One. Therefore, the fourth
essential element has been satisfied.

95.     Plaintiff will, in all likelihood, suffer an increase in government surveillance as a result of
this accusation. They can't do anything *yet*, but they have announced their intention to commit
Plaintiff, the next chance they get. Even if they do not, that was clearly Rogers' intention,
anyway. Therefore, the fifth and final element of malicious prosecution – damages – has been
sufficiently plead.

96.     Plaintiff is also suing Russel Rogers for a personal-capacity defamation claim. To prevail
on a claim of defamation, Plaintiff must allege and subsequently prove the the following
essential elements: "First, that he has sustained damages. Second, that [the Defendant] published
a false statement of fact concerning [the Plaintiff]. Third, that the statement of fact was
defamatory. Fourth, that [the Defendat] acted with negligence in failing to determine the truth of
the statement prior to its publication or with knowledge that the statement was false. And fifth,
that the publication of the statement was a proximate cause of [the Plaintiff]'s damages." See
*Wal-Mart Stores, Inc. v. Lee*, 74 SW 3d 634 (2002).

97.     For the first and fifth elements, Plaintiff incorporates, by reference, the contents of ¶ 74
of this Complaint.

98.     The second and third elements – the publication of a false statement, and its defamatory
nature – are both self-explanatory.

99.     The fourth element – negligence in determining the truth of the matter – is evidenced by

the aforementioned introduction of a mental diagnosis as an exhibit at trial (see ¶ 112(a) of this Complaint). Rogers was *made privy to evidence* that refuted his beliefs, and that came from a man with actual medical *credentials*. If he didn't take advantage of the opportunity handed to him and reviewed that evidence, he has no one to blame but himself for failing to do so.

100.    As a result, Plaintiff has sufficiently plead the essential elements of defamation, and is entitled to recover on them.

### Sub-Section 7: ADA Retaliation against Goldie and David D. Stebbins

101.    Goldie, acting on behalf of David D. Stebbins, filed a motion seeking to strip Plaintiff of his constitutional right to court access. This, unquestionably, constitutes an adverse action.

102.    Since Goldie (and, by proxy, David D. Stebbins) admitted to committing this adverse action based, at least 0.0000000000000000000001%, on at least one statutorily protected activity from Plaintiff, the element of "causal connection" is sufficiently plead.

103.    Plaintiff did not suffer any injuries as a result of this adverse action until Jun 8, 2015. However, on that date, Special Judge Russel Rogers had demonstrated that Goldie's and David D. Stebbins' attempt to instill prejudice against Plaintiff was, at least partially, successful, when Rogers denied Plaintiff's for New Trial, and the denial was based, at least 0.000000000000001% in part, on Plaintiff's statutorily protected activities.

104.    Therefore, Plaintiff is entitled to recover against Goldie and David D. Stebbins, for them playing their role in the ADA Retaliation.

### Sub-Section 8: The § 1983 claim for collaborating with the judge through secretary

105.    David D. Stebbins is automatically liable for any/all actions of his attorney. See *Siems v. City of Minneapolis*, 560 F. 3d 824, 827 (8th Cir. 2009) ("we have long held that litigants choose their counsel at their own peril"). See also *Link v. Wabash R. Co.*, 370 US 626 (1962) ("Petitioner

voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent")

106.    Furthermore, private citizens can be held liable in federal court for violations of 42 USC § 1983. Even though that statute normally only prohibits state action, a suit under this statute against private citizens is allowed if those citizens worked alongside one or more state actors to violate Plaintiff's constitutional rights. See *White v. McKinley*, 519 F. 3d 806, 815-816 (8th Cir. 2008) ("Although § 1983 can only be used to remedy deprivation of rights done under the color of law, a private actor can be liable 'under § 1983 for conspiring with state officials to violate a private citizen's right[s]'").

107.    Here, Goldie (acting on behalf of David D. Stebbins, making that man vicariously liable) has conspired with a state actor (Special Judge Russel Rogers, appointed by Donna Gay and Jim Hannah, using Kristie Williams as liaison) to deprive Plaintiff of his Fourteenth Amendment right to due process of law (specifically, by depriving Plaintiff of his right to view and confront the evidence against him by not making Plaintiff privy to some of Goldie's communications with the Court).

108.    Kristie Williams is liable because she unlawfully served as liaison to facilitate this communication, despite having no plausible excuse for not realizing that this communication (and, by proxy, her involvement in it) was patently illegal. You do not hang around lawyers for more than two weeks without realizing that they have strict behavioral standards they must adhere to, and Williams was directly assisting her boss in breaching those ethical standards. Although Russel Rogers may have judicial immunity for this, his secretary does not.

109.    Meanwhile, David D. Stebbins is jointly liable because he was Goldie's client while this communication was going on. It is black letter law that litigants are liable for the acts and

voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent")

106.    Furthermore, private citizens can be held liable in federal court for violations of 42 USC § 1983. Even though that statute normally only prohibits state action, a suit under this statute against private citizens is allowed if those citizens worked alongside one or more state actors to violate Plaintiff's constitutional rights. See *White v. McKinley*, 519 F. 3d 806, 815-816 (8th Cir. 2008) ("Although § 1983 can only be used to remedy deprivation of rights done under the color of law, a private actor can be liable 'under § 1983 for conspiring with state officials to violate a private citizen's right[s]'").

107.    Here, Goldie (acting on behalf of David D. Stebbins, making that man vicariously liable) has conspired with a state actor (Special Judge Russel Rogers, appointed by Donna Gay and Jim Hannah, using Kristie Williams as liaison) to deprive Plaintiff of his Fourteenth Amendment right to due process of law (specifically, by depriving Plaintiff of his right to view and confront the evidence against him by not making Plaintiff privy to some of Goldie's communications with the Court).

108.    Kristie Williams is liable because she unlawfully served as liaison to facilitate this communication, despite having no plausible excuse for not realizing that this communication (and, by proxy, her involvement in it) was patently illegal. You do not hang around lawyers for more than two weeks without realizing that they have strict behavioral standards they must adhere to, and Williams was directly assisting her boss in breaching those ethical standards. Although Russel Rogers may have judicial immunity for this, his secretary does not.

109.    Meanwhile, David D. Stebbins is jointly liable because he was Goldie's client while this communication was going on. It is black letter law that litigants are liable for the acts and

omissions of their freely-retained counsel. See *Siems v. City of Minneapolis*, 560 F. 3d 824, 827 (8th Cir. 2009)[6]. See also *Inman v. American Home Furniture Placement, Inc.*, 120 F. 3d 117, 118-119 (8th Cir. 1997)[7]. See also Comiskey v. JFTJ CORP., 989 F. 2d 1007, 1010 (8th Cir. 1993)[8]. See also *Pioneer Investment Servs. Co. v. Brunswick Assoc.*, 507 U.S. 380, 396 (1993)[9]. See also *Link v. Wabash R. Co.*, 370 US 626, 633-634 (1962)[10].

## Sub-Section 9: Gordon Webb's First Amendment Censorship

110.    First, because this act was done in Webb's *administrative* capacity, he is not entitled to judicial immunity. See *Forrester v. White*, 484 U.S. 219 (1988).

111.    Nor is he entitled to *qualified* immunity, either, since it is clearly-established law that …

(a)    Speech censorship that is aimed at the content of the speech (rather than its time, place, or manner) must pass "strict scrutiny" to be constitutional. See Turner v. Safley, 482 US 78 (1987).

(b)    To pass strict scrutiny, a law or other legal mandate must be the "least restrictive means" of achieving a "compelling state interest," and furthermore, that the government holds the burden of proving that the law passes strict scrutiny, no the Plaintiff's burden to prove that it fails. See *City of Boerne v. Flores*, 521 US 507, 515-516 (1997).

(c)    Ridding government officials of a mildly-annoying, but otherwise law-abiding

---

6    "We are not wholly unsympathetic to Siems's position. The record does not contain any evidence that Siems himself contributed in any way to the dilatory actions of his counsel. However, we have long held that litigants choose their counsel at their own peril.

7    Litigants choose counsel at their peril. While it may seem harsh to make defendants answer for their attorney's behavior, any other result would punish Inman for the inaction of her opponents' lawyer … If they were truly diligent litigants who were misled and victimized by their attorney, they have recourse in a malpractice action

8    "A party chooses counsel at his or her peril. Counsel's disregard of his or her professional responsibilities can lead to extinction of his or her client's claims. It is a well-established principle that a party is responsible for the actions and conduct of his or her counsel and that, under appropriate circumstances, dismissal or default may be entered against a party as a result of counsel's actions."

9    "The court also appeared to focus its analysis on whether respondents did all they reasonably could in policing the conduct of their attorney, rather than on whether their attorney, as respondents' agent, did all he reasonably could to comply with the court-ordered bar date. In this, the court erred."

10   "There is certainly no merit to the contention that dismissal of petitioner's claim because of his counsel's unexcused conduct imposes an unjust penalty on the client. Petitioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent. Any other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent and is considered to have 'notice of all facts, notice of which can be charged upon the attorney.'"

citizen, simply because they do not like that person, is NOT a "compelling state interest."

Indeed, that is exactly the sort of arbitrary government abuse that the First Amendment was

designed to protect against in the first place.

112.    Remember that, to defeat qualified immunity, it is not required that the illegality of the

Defendant's specific acts or omissions be illegal; rather, the right being tread upon must be

clearly-established. Once that happens, as long as a reasonable person in the Defendant's

position would realize that their acts tread upon that right without passing the required level of

scrutiny (whether it be strict/heightened scrutiny, intermediate scrutiny, or rational basis review),

then qualified immunity is lost.

113.    As a result, Gordon Webb's order – insofar as it gagged Plaintiff from even *discussing* the

case – is a blatant violation of numerous First Amendment rights.

### Sub-Section 10: The Perjuries

114.    There is an Arkansas statute allowing citizens to bring private suits for damages for

felonies, without having to sue for their tort equivalents. This statute is codified in the Arkansas

code as Ark. Code Ann. § 16-118-107, and states the following:

> "**(a) (1)** Any person injured or damaged by reason of conduct of another person
> that would constitute a felony under Arkansas law may file a civil action to
> recover damages based on the conduct.
> **(2)** The burden of proof for showing conduct that constituted a felony shall be a
> preponderance of the evidence.
> **(3)** If the person who is injured or damaged prevails, he or she shall be entitled to
> recover costs and attorney's fees.
> **(b)** The action may be maintained by the person who was injured or damaged or,
> after the person's death, the executor, administrator, or representative of his or her
> estate.
> **(c)** The remedy provided in this section shall be in addition to any other remedies
> in law or equity.
> **(d)** This section does not apply to offenses under § 5-28-101 et seq. or the
> Medicaid Fraud Act, § 5-55-101 et seq."

115. So, this perjury claim is indeed properly before the Court, by invoking the federal court's supplemental jurisdiction, after Goldie and David D. Stebbins are already made Defendants by reason of their illegal ex parte communication with Russel Rogers though Kristie Williams (this is why Plaintiff is giving this legal argument last, even though the factual allegations to support these claims came first). The question, therefore, is weather Plaintiff has alleged sufficient facts to support claims for perjury.

116. Remember that it is the State of Arkansas' perjury statute, not the federal statute, that governs in this case, because this is invoking the Court's *supplemental* jurisdiction. See *Murphy v. LCA-Vision, Inc.*, 776 F.Supp.2d 886, 900-901 (E.D. Ark. 2011) (holding that *federal* felonies are not cognizable under A.C.A § 16-118-107, even when the case is being filed in *federal* court). That being said, the Arkansas state statute of Ark Code Ann. § 5-53-102 says the following:

"(a) A person commits perjury if in any official proceeding he or she makes a false material statement, knowing it to be false, under an oath required u authorized by law.
(b) Lack of knowledge of the materiality of the statement is not a defense to a charge of perjury.
(c) Perjury is a Class C felony."

117. The statement does have to be "material." To that end, Ark. Code Ann. § 5-53-101(a)(1) states the following: "'False material statement' means any false statement, regardless of its admissibility under the rules of evidence, which affects or could affect the course or outcome of an official proceeding or the action or decision of a public servant in the performance of any governmental function." However, Plaintiff has already explained the relevance of these pieces of testimony, when he was laying out the facts in this Amended Complaint. Therefore, this element is sufficiently plead.

118. For Perjuries Nos. 1, 2, and 6[11], the perjury is proven based on inconsistent statements.

11 Lying about how much alcohol he consumes on a daily basis. Perjury No. 7 is when he lied about how long it takes for alcohol to leave the human body.

"When a person charged with perjury or false swearing has made inconsistent material statements under oath and affecting the same matter or transaction, all the several inconsistent material statements may be charged in different counts of the same indictment or information. Proof of the inconsistency of statements is of itself evidence that one (1) of the statements is false, and it is not necessary to sustain a conviction to establish which statement is false." See Ark. Code Ann. § 5-53-106(a)-(b). Therefore, Plaintiff has alleged sufficient facts, in those three counts of perjury, to show that the Defendant was lying in at least one of them.

119.    For Perjuries Nos. 3, 4, 5, and 7[12], Plaintiff has plead sufficiently that David D. Stebbins and James E. Goldie were lying. Furthermore, they *knew* they were lying, because these are not the sort of things one can say and genuinely believe them to be true. He either remembers going to the AA meeting (and thus, should have the certificate of completion to prove it; we can uncover that in discovery), or he doesn't. He either knows that he does not drive, or he knows that he does. He knows the reason he does not have his driver's license, and making up that it costs more than twenty bucks is ludicrous.

120.    Thus, Plaintiff has alleged sufficient facts to support seven (7) counts of perjury.

### Sub-Section 11: Tampering with Physical Evidence

121.    This is also a felony, brought before this Court using its supplemental jurisdiction, and by invoking the Arkansas statute of Ark. Code Ann. § 16-118-107.

122.    The Arkansas statute of A.C.A. § 5-53-111 states the following:

"A person commits the offense of tampering with physical evidence if he or she alters, destroys, suppresses, removes, or conceals any record, document, or thing with the purpose of impairing its verity, legibility, or availability in any official proceeding or investigation."

123.    Even if Williams did not expect the *ex parte* communications to be subject to

---

12 This is the one where he said that alcohol exits the human body a flat, universal rate of "2 beers an hour."

investigation by the Committee on Professional Conduct or Judicial Discipline & Disability Commission, surely she would not have deleted the emails while an *appeal of that same case* was still pending! It is a matter of common sense that you do not throw away case-related documents while any stage of that case is still pending, including the 90 day period when the losing party can petition the U.S. Supreme Court to review the matter!

124. As such, she has no excuse for thinking that deleting those emails would not result in prejudice. Therefore, she deserves to be punished for this conduct.

## SECTION III: CLARIFICATION: WHO IS SUED FOR WHAT?

125. We now have eight (8) defendants in this action, and a total of thirteen (13) causes of action to sue over. Not all Defendants are included n all causes of action, either. This could potentially get a little confusing.

126. To help ease the confusion, Plaintiff is attaching **Exhibit A**, a table, listing all the Defendants, and all the causes of action, with checks showing which Defendant is being sued for which cause of action.

127. Just remember: "ADA Retaliation #1" is where Goldie and David D. Stebbins filed the motion to seek to deny Plainitff prospective court access, while "ADA Retaliation #2" is Russel Rogers' decision to incorporate Plaintiff's statutorily protected activities into his official rulings. The "§ 1983" claim is where Goldie (acting on behalf of David D. Stebbins) collaborated with said special judge, through his secretary to rig the case in his client's favor. Meanwhile, the seven perjuries correspond to how they were listed in this Complaint, while the "tampering with physical evidence" should be self-explanatory. Last but not least, the "§ 1983 claim for First Amendment Censorship" concerns the actions complained about in Section I, Sub-Section 10 and Section II, Sub-Section 9 of this Complaint.

## SECTION IV: RELIEF REQUESTED

128. Plaintiff requests the following damages and injunctive relief:

### Sub-Section 1: $11,000,000 for loss of case

129. It is safe to assume that, but for any of these nine violations, the outcome of Plaintiff's case might very easily have been very, very different from how it actually turned out.

130. These damages can be shared among all Defendants who are found liable for them.

### Sub-Section 2: $1,000,000 in emotional distress damages

131. After the jury unanimously rendered a verdict in David D. Stebbins' favor, Plaintiff, feeling that there was no justice in the world, retired to his apartment, expecting to never leave that place. Why, you ask? Because as soon as he got home, he took off his shirt and proceeded to ingest and entire Powerade bottle full of bleach. He did not WANT to live in a world where judges could simply ignore the law if they felt like it.

132. To make a long story short, Plaintiff's life was saved. He was taken to a hospital in Jonesboro and diagnosed with Clinical Depression.

133. The Defendants' actions drove Plaintiff to a literal suicide attempt. As a result, Plaintiff believes that a million dollars is well within the bounds of reason.

134. These damages can also be shared among all Defendants who are found liable for them.

### Sub-Section 3: $24,000,000 in punitive damages for each intentional act.

135. Plaintiff asks for punitive damages twice that of the compensatory damages. No one has any business practicing law if they believe that ex parte communications are okay. No one has any business practicing law if they believe that perjury during civil discovery is legal. In fact, any person who believes this would, in all likelihood, fail the bar exam.

136.     The Defendants' actions were patently illegal, and, based on the quotes given in ¶ 60 of this Complaint, clearly done out of spite and animosity. They are very much deserving of punitive damages.

137.     Even in the astronomical event that Plaintiff prevail on appeal, or on his "Second Motion for New Trial and to Recuse," Plaintiff still requests $24M in punitive damages. The reason is because, even if it turns out that the Defendants ultimately failed to inflict the injury of "loss of case" on Plaintiff, they still deserve to be punished for trying. "Punitive damages should bear a reasonable relationship to the harm *that is likely to occur from the defendant's conduct* as well as to the harm that actually has occurred." See *TXO Production Corp. v. Alliance Resources Corp.*, 509 US 443, 460 (1993).

138.     Plaintiff also asks for $24,000,000 in punitive damages for each and every act on which Plaintiff prevails in this case. Each one is individually deserving of punitive damages, and so they should get individual punitive damages each.

139.     Plaintiff also asks that each *Defendant* who is found liable be held liable for a separate set of punitive damages. For example, if Plaintiff prevails on the issue of *ex parte* communications, then Plaintiff asks for $24,000,000 each from Goldie, David D. Stebbins, and Kristie Williams.

### Sub-Section 4: $3,000 per day for each day the prosecutor & DHS do not withdraw their heightened surveillance.

140.     As a result of Russel Rogers' defamation and malicious prosecution, Plaintiff has suffered the injury of "increased government surveillance." Unless and until Plaintiff receives proof that this increased surveillance is being terminated, Plaintiff demands to be compensated the sum of $1,000 for each day of increased surveillance. That is $500 per day for the prosecutor, and $500 per day for the DHS.

141. He also demands twice that much – or $2,000 per day – in punitive damages, because Rogers acted out of pure hatred for Plaintiff, and nothing more.

### Sub-Section 5: Injunction to cease and desist any/all retaliation & discrimination, no matter what.

142. Plaintiff asks that the State of Arkansas be issued an injunction to cease and desist any/all adverse actions or omissions caused, even slightly, by Plaintiff's litigation history.

143. An exception can be made for charging Plaintiff with the crime of malicious prosecution (and yes, that is an actual CRIME under Arkansas law. See Ark. Code Ann. § 5-53-131), so long as those charges are, themselves, non-frivolous (e.g. if it is revealed that the State had no real evidence that Plaintiff's lawsuit lacked probable cause, and they just charged Plaintiff in the hopes of intimidating him into a plea bargain, then that would violate this injunction).

144. However, although Plaintiff will not make the patently frivolous request to be exempt from criminal prosecutions, he DOES demand that the State be ordered to cease and desist its surveillance of Plaintiff, beyond that of normal citizens.

145. More importantly, the State should be forced to actually ENFORCE this injunction against her own officers. If any officer commits any act in violation of these injunctions, the State should be obligated to A) fire that employee, B) compensate Plaintiff for the injuries caused by that employee's conduct, and C) if the conduct amounted to criminal conduct – even so much as a Class C Misdemeanor – to charge that person with said crime. The rogue government officer can be made to compensate the State for the compensatory damages it had to pay Plaintiff in the form of restitution, but that would be the *State's* interest to pursue, not Plaintiff's. That way, if they wish to *nolle prossed* the charges, it would exclusively be the State, not Plaintiff, suffering the consequences.

## SECTION V: JURY DEMAND

146.   If a trial is needed to adjudicate any material facts, Plaintiff demands that the case be tried by a jury of his peers. Injunctive relief can be discussed after the jury issues its verdict.

## SECTION VI: CONCLUSION

147.   The Defendants – especially the State of Arkansas – have kept up this discrimination and retaliation for four years now. They clearly feel like the rules apply to everyone but them, and they need to be taught that the rules – especially the Constitution – applies to them, more than anyone. No one is above the law, but they certainly seem to think of themselves as such. It's time they be put in their place.

148.   Wherefore, premises considered, Plaintiff respectfully prays that all the relief requested in Section IV be granted, costs incurred be awarded, and any other relief to which he may be entitled. So requested on this, the 24th day of July, 2015.

David Stebbins
123 W. Ridge St.,
APT D
Harrison, AR 72601
870-204-0516
stebbinsd@yahoo.com