## UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF ARKANSAS
## LITTLE ROCK DIVISION

**DAVID A. STEBBINS**                                           **PLAINTIFF**

VS                 CASE NO. 4:15CV0436 JLH

**JIMM HANNAH, DONNA GAY, STATE OF
ARKANSAS, ARKANSAS ADMINISTRATIVE
OFFICE OF THE COURTS, RUSSELL ROGERS,**           **DEFENDANTS**
**DAVID D. STEBBINS, JAMES GOLDIE, KRISTIE
WILLIAMS, GORDON WEBB, AND BRAD KARREN**

### PLAINTIFF'S SECOND AMENDED COMPLAINT

1. Comes now, *pro se* Plaintiff David Stebbins, who, with the Court's permission, hereby submits the following Second Amended Complaint. Specifically, he wishes to add Brad Karren as a co-Defendant and sue him, as well as Jim Hannah, Donna Gay, and the State of Arkansas, for another act of Retaliation in violation of Sec. 503 of the Americans with Disabilities Act. He also wishes to sue Brad Karren, in his official capacity, for a violation of 42 USC § 1983 for an act for which he does not hold judicial immunity.

### FACTS OF THE CASE

2. The contents of Doc. 2 and Doc. 3 (Plaintiff's Complaint & Jury Demand, as well as Plaintiff's Amended Complaint & Jury Demand) are hereby incorporated by reference. Plaintiff is not abandoning any claims or legal arguments; he is adding to them. Please do not read this complaint as abandoning any existing claims, because they are not intended to be taken as such.

3. On June 24, 2015, Special Judge Brad Karren – who is normally a circuit judge in Bentonville – was assigned, by Donna Gay and Jim Hannah, as special judge in Case No. CV2015-38-4 in the Boone County Circuit Court, in which Plaintiff was also a *pro se* party. The order of assignment made it perfectly clear that he had no authority in the Boone County Circuit

Court beyond that one specific case.

4. On August 4, 2015, a motions hearing was held in that case. He had arranged for the Boone County Circuit Clerk to be present at the hearing.

5. During said hearing, Karren freely admitted to having looked up Plaintiff's litigation history on PACER. He then proceeded to dismiss the Plaintiff's complaint, with prejudice. Officially, he did so on the grounds of collateral estoppel, a grounds not even raised by the Defense. What is even more bizarre is the fact that he used *Montana* law (rather than *Arkansas* law) to reach his decision regarding the *sua sponte* application of the collateral estoppel defense. See, in Arkansas, for a claim to be collaterally estopped, the issue must have been "actually litigated" in a previous case (see Abraham v. Beck, 2015 Ark. 80), whereas Montana law provides a slightly more lenient standard for claim preclusion.

6. He then proceeded to act entirely outside of his jurisdiction, usurp the position of Administrative Judge of the 14th Judicial Circuit, and bar Plaintiff from filing any more *pro se* lawsuits in the Boone County Circuit Court. He gave no explanation as to the basis of this sanction other than he did not believe that Plaintiff had properly researched the law (as if he expected Plaintiff to magically be aware of the fact that A) he was going to raise an affirmative defense *sua sponte*, and B) he was going to use Montana law).

7. He explained that the reason he asked the Clerk to be present for the hearing was so she could be aware of this particular sanction.

8. Plaintiff begged the judge for an opportunity to be heard, as he was entitled under Rule 11(c)(6) of the Arkansas Rules of Civil Procedure, but he replied with a one-word answer: "No."

9. He then stormed out of the courtroom without hearing another word. He refused to give Plaintiff even ONE SECOND to argue his case.

## LAW AND DISCUSSION

10. The following law is applicable to this action:

### Interpretation of the Evidence

11. Karren freely admitted to having reviewed Plaintiff's litigation history prior to the hearing. It is, therefore, safe to assume that he was aware of Plaintiff's history of ADA discrimination. Plaintiff described this history in ¶¶ 3-7 of Doc. 2 of this case, the contents of which are hereby incorporated by reference.

12. He arranged for the Circuit Clerk to be present at the hearing so she would be aware of the sanction he was issuing. This proves that he had already made up his mind about what he wanted to do in the case, before he heard any oral arguments, thus violating Plaintiff's axiomatic constitutional due process right "to be heard."

13. His official grounds for dismissing the lawsuit – *sua sponte* collateral estoppel using Montana law, without giving the Plaintiff an opportunity to be heard – is clearly pretextual. His real reason is, in all likelihood, his belief that Plaintiff's lawsuits (which, to remind the court, are 90% ADA or Rehabilitation Act) were stupid and deserved persecution and censorship. Plaintiff feels that he will not need actual *evidence* of pretext in this case, as his reasoning is so out-of-left-field that a reasonable jury could easily find it to be pretextual, just on its absurdity alone.

   (a) It's kind of like how attorneys will often say that an employer can technically fire you for wearing a red shirt. While that may be the case as a matter of *law*, no legitimate manager is going to fire someone over something that stupid; to the contrary, the mere fact that the employee was "wearing a red shirt" is so contrived that a jury would probably think it's pretextual, just on the absurdity of the excuse, alone. Just because something is technically legal, as a matter of law, doesn't mean a jury is going to eat it up with a spoon, as a matter of

fact.

(b)     Credence is lent to this theory under the precedent of Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 US 574, 586-587 (1986), stating, in pertinent part, that "[T]he issue of fact must be 'genuine.'" A defendat cannot rely on "some metaphysical doubt s to the material facts." When a Defendant's version of events is "implausible — if the claim is one that simply makes no economic sense — respondents must come forward with more persuasive evidence to support their claim than would otherwise be necessary."

### 42 USC § 1983 and Judicial Immunity

14.     The sanction to bar Plaintiff from exercising his constitutional right to court access without paying through the nose for an expensive attorney is an act taken A) in his administrative capacity, not his judicial capacity, and B) taken in the complete absence of all jurisdiction.

15.     It was taken in his *administrative* capacity because he was ordering what the *Clerk* can and cannot do. It's just like Gordon Webb, ordering in his *administrative* capacity that Case No. CV2012-85-4 in that case was closed. Clerks (and, by proxy, any orders given to clerks) are ministerial officers, and thus are not protected by judicial immunity. See *Maness v. Dist. Court, Logan County-Northern Div.*, 495 F. 3d 943 (8th Cir. 2007).

16.     It is taken in the complete absence of all jurisdiction because the order, from Jim Hannah, assigning him to the case made it perfectly clear that his jurisdiction only entailed these "additional duties" and that he would stay in the jurisdiction of his own circuit court the same as if no assignment had been made. Therefore, for Karren to issue any ruling that was dispositive of anything that was not before the Court in that one specific case constituted a complete usurpation of power.

17.     It would have been one thing if he submitted a recommendation to Gordon Webb – in his

official capacity as Administrative Judge for the 14th Judicial Circuit – recommending such a sanction. But instead, he decided to take the matter into his own hands, like a common vigilante.

## ADA and Rehabilitation Act Retaliation

18. His decision to *dismiss* the lawsuit, on the other hand, is protected by judicial immunity. However, that immunity is effectively abrogated by the precedent of *Tennessee v. Lane*, 541 US 509 (2004). In that case, one of the plaintiff was held in contempt of court (see *id* at 514), an act that would undeniably have been protected by judicial immunity under any other circumstance. However, because the adverse action was caused, at least marginally in part, by the plaintiff's disability, the Defendants were not protected by any form of immunity. The plaintiff wasn't even held in contempt on grounds of his disability, per se; he was held in contempt for "failure to appear" because he refused to humiliate himself by climbing the stairs. But, because his disability was tied, however indirectly, to his adverse action, there was neither 11th Amendment, nor Judicial, immunity.

19. Plaintiff wishes to place the Court on notice that, even though the focus of this section will be the dismissal of Plaintiff's claims, he is still alleging that the imposition of deprivation of court access is also in violation of Section 503 of the Americans with Disabilities Act, as well as 42 USC § 1983.

20. Continuing: In order to establish a *prima facie* case of retaliation, a plaintiff must show (1) that he engaged in a statutorily protected activity, (2) that an adverse action was taken against him, and (3) a causal connection between the adverse action and the protected activity. See *Amir v. St. Louis University*, 184 F. 3d 1017, 1025 (8th Cir. 1999). However, for purposes of a complaint, and whether the Plaintiff stated a claim upon which relief can be granted, Plaintiff need only *plead* the required facts, and the Court must accept the Plaintiff's factual allegations as

true and in a light most favorable to the Plaintiff. See *Henley v. Brown*, 686 F. 3d 634, 633 (8th Cir. 2012) (Footnote #1). Moreover, because Plaintiff is *pro se*, he is entitled to have his factual allegations construed broadly, and his case summarily dismissed ONLY if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." See *Haines v. Kerner*, 404 US 519 (1972).

21. Plaintiff has already sufficiently plead the element of "statutorily protected activity" in ¶¶ 3-7 of Doc. 2 of this case, the contents of which are hereby incorporated by reference.

22. Plaintiff has sufficiently plead *two* adverse actions: Dismissal of claims, and stripping of court access.

23. Plaintiff has plead sufficient facts upon which a jury could find a causal connection between the adverse action and statutorily protected activity. This is because, as explained in ¶¶ 11-13 of this Second Amended Complaint, the odds that this was NOT done out of frustration of Plaintiff's lawsuits is one-in-a-million.

24. Therefore, Plaintiff has stated sufficient facts to entitle himself to his day in court on the issue of ADA Retaliation.

25. Plaintiff believes that the State of Arkansas, Jim Hannah, and Donna Gay should also be liable because it was through Hannah and Gay's assignment of Karren that Karren even arguably had the jurisdiction to do this in the first place. If they had assigned a judge who would respect Plaintiff's right to be free from retaliation, this would not have happened.

## RELIEF REQUESTED

26. In addition to the relief requested in his original and first amended Complaints in this case, Plaintiff requests the following relief in connection with these new actions:

### Injunction: Immediate reinstatement of court access.

27.     Plaintiff asks that his court access rights be fully reinstated, effectively immediately upon the injunction being issued.

28.     Moreover, he asks that he be protected from summary sanctions, under Rule 11 of the Arkansas Rules of Civil Procedure, unless the judges can PROVE that the sanctions are not motivated, however remotely, by animosity against Plaintiff for his ADA or Rehabilitation Act lawsuits, since it is clear that they cannot be trusted to use it the way it was intended: to curb ACTUAL abuse of the litigation system, and not simply to silence those who they do not like.

29.     They would still be allowed to charge Plaintiff with the crime of malicious prosecution, Class A Misdemeanor (as Plaintiff has already explained in his original and Amended Complaints in this case), but only if they fully accommodate ALL of Plaintiff's constitutional rights, including, but not limited to,

   (a)    His right to trial by jury of his peers

   (b)    His right to EFFECTIVE assistance of counsel (and that means an attorney who will actually *defend* Plaintiff, not simply persuade Plaintiff to plea bargain)

   (c)    His right to speedy trial

   (d)    His right to compel witnesses in his favor

   (e)    His right to have illegally-obtained evidence suppressed

   (f)    His right to not be prejudiced by hearsay evidence

   (g)    His right to not be prejudiced by prior bad acts in violation of Rule of Evidence 404(b).

   (h)    His right to an impartial judge (that is ... one who DOESN'T hold a bias against Plaintiff for any reason, including his lawsuits. Not simply a judge who is willing to ignore

his bias, but one who DOESN'T hold the bias in the first place).

(i) The right to not be adjudicated of any rights which are not presented to the court by an opposing party.

(j) The right to have his actions judged according to the law that is actually applicable on Arkansas soil, rather than Montana law.

(k) The right to not be judged frivolous unless it actually is frivolous.

(l) The right to have any violations of these rights overturned on appeal, even if that means the State becomes liable.

(m) And any other right Plaintiff has under the Constitution.

30. If ANY of these rights are violated, the State should be held liable, unless they can PROVE (not just claim, but PROVE) that the violations were for a different reason than lawsuit-fueled animosity towards Plaintiff.

### Damages: Compensatory Damages for Loss of Case

31. Plaintiff seeks compensatory damages against Brad Karren, the State of Arkansas, Jim Hannah, and Donna Gay for the loss of Case No. CV2015-38-4 in the Boone County Circuit Court.

32. Plaintiff will, indeed, be appealing the dismissal. However, until the aforementioned injunction is issued, the Arkansas Court of Appeals will, almost certainly, simply affirm the decision out of a similar lawsuit-fueled animosity against Plaintiff.

### Damages: Punitive Damages of $1,000,000 for Hannah, Gay, and Karren, and $100,000,000 for the State of Arkansas

33. These people need to suffer. They need to be taught a lesson. The only way to teach them to respect Plaintiff's constitutional rights whether they like it or not is to put them in debt up to

their eyeballs.

34.   Well, we could ALSO try to convince the U.S. Attorney to charge them with something, and incarcerate them, but that is likely not going to happen for the same reasons Plaintiff's appeal is likely to result in summary affirmance without any explanation whatsoever.

35.   This retaliation needs to stop! Please, Judge, make it stop!

## JURY DEMAND

36.   Plaintiff demands a jury trial.

## CONCLUSION

37.   Wherefore, premises considered, Plaintiff respectfully prays that the aforementioned relief be granted.

38.   So requested on this, the 5th day of August, 2015.

*David Stebbins*
David Stebbins
123 W. Ridge
APT D
Harrison, AR 72601
870-204-6516
stebbinsd@yahoo.com