FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

AUG 1 8 2015

JAMES W. McCORMACK, CLERK
By: _____ DEP CLERK

# UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF ARKANSAS
### LITTLE ROCK DIVISION

**DAVID A. STEBBINS**                                                           **PLAINTIFF**

VS                              CASE NO. 4:15CV0436 JLH

**JIMM HANNAH, DONNA GAY, STATE OF
ARKANSAS, ARKANSAS ADMINISTRATIVE
OFFICE OF THE COURTS, RUSSELL ROGERS,                    DEFENDANTS
DAVID D. STEBBINS, JAMES GOLDIE, KRISTIE
WILLIAMS, AND BRAD KARREN**

### RESPONSE TO [005] ORDER REFERRING CASE TO MAGISTRATE JUDGE VOLPE

Comes now, *pro se* Plaintiff David Stebbins, who hereby submits the following Response to the Judge's Order referring all pre-trial motions to Magistrate Judge Volpe.

1. This order stated, in part, "As part of his review, Judge Volpe should consider whether the Court should follow the Western District in determining whether to grant Stebbins' motion for leave to proceed in forma pauperis."

2. In issuing this request, District Judge Holmes is obviously stating that it does not have to follow the Western District if it does not want to. Plaintiff is responding to, hopefully, persuade this Court that the original order was entered out of personal frustration and bias against Plaintiff, rather than legitimate judgment, and that it should not agree to issue such an order.

3. It is binding precedent in the 8th Circuit that an "affinity for litigation, standing alone, would not provide a sufficient reason for issuing such an injunction." See *Ruderer v. United States*, 462 F. 2d 897, 899 (8th Cir. 1972). Massive persuasive precedent agrees with this case law. See *Castro v. United States*, 775 F. 2d 399, 409 (1st Cir. 1985) ("appellants' apparent 'affinity for litigation,' standing alone, would not provide sufficient justification to issue an injunction"). See also *In re Powell*, 851 F. 2d 427, 434 (DC Cir. 1988) ("Moreover, mere litigiousness alone

does not support the issuance of an injunction. Both the number and content of the filings bear on a determination of frivolousness or harassment. Such a determination must be made with care"). *Klein v. Adams & Peck*, 436 F. 2d 337, 339 (2nd Cir. 1971). See also *Williams v. Warren*, 745 SE 2d 809, 812 (2013) (from the State of Georgia) ("The fact that a plaintiff is litigious, that he sues everyone who offends him or has any disagreement with him, should not affect his right to recover what is rightly his").

4. See also *Cromer v. Kraft Foods North America, Inc.*, 390 F. 3d 812, 817-18 (4th Cir. 2004):

> "Undoubtedly, the All Writs Act, 28 U.S.C. § 1651(a) (2000), grants federal courts the authority to limit access to the courts by vexatious and repetitive litigants like Cromer.
>
> Such a drastic remedy must be used sparingly, however, consistent with constitutional guarantees of due process of law and access to the courts. U.S. Const. amend. XIV, § 1. These rights are longstanding and of fundamental importance in our legal system. The due process clause requires that every man shall have the protection of his day in court. And, the Supreme Court has explained that the particular constitutional protection afforded by access to the courts is the right conservative of all other rights, and lies at the foundation of orderly government.
>
> Thus, a judge should not in any way limit a litigant's access to the courts absent exigent circumstances, such as a litigant's continuous abuse of the judicial process by filing meritless and repetitive actions Indeed, use of such measures against a pro se plaintiff should be approached with particular caution and should remain very much the exception to the general rule of free access to the courts.
>
> In determining whether a prefiling injunction is substantively warranted, a court must weigh all the relevant circumstances, including (1) the party's history of litigation, in particular whether he has filed vexatious, harassing, or duplicative lawsuits; (2) whether the party had a good faith basis for pursuing the litigation, or simply intended to harass; (3) the extent of the burden on the courts and other parties resulting from the party's filings; and (4) the adequacy of alternative sanctions."

5. The Western District freely acknowledged that Plaintiffs lawsuits were filed in "good

faith," only that they "proved meritless." But just because they violated binding precedent doesn't mean you have to.

6. Court access is a fundamental right. See *California Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 510 (1972) ("The right of access to the courts is indeed but one aspect of the right of petition"). Therefore, any curbing of this right must pass strict scrutiny. See *Shapiro v. Thompson*, 394 US 618, 660 (1969) ("For it has been held that a statutory classification is subject to the "compelling interest" test if the result of the classification may be to affect a "fundamental right," regardless of the basis of the classification. This rule was foreshadowed in *Skinner v. Oklahoma*, 316 U. S. 535, 541 (1942), in which an Oklahoma statute providing for compulsory sterilization of 'habitual criminals' was held subject to 'strict scrutiny' mainly because it affected 'one of the basic civil rights.'"). To pass strict scrutiny, an official act must be the "least restrictive means" of achieving its goals. See Turner v. Safley, 482 US 78, 83 (1987) ("The correspondence regulation did not satisfy this standard because it was not the least restrictive means of achieving the security goals of the regulation").

7. Now, ask yourselves: Is there a lesser-restrictive means of curbing alleged abuse of the court system? Yes. Yes there is. In fact, Plaintiff has already given it to you: The Arkansas Class A Misdemeanors of "malicious prosecution." Such an act would probably be even more effective at curbing perceived abuse of the litigation system, since it bears the risk of up to a year of incarceration.

8. However, it is a "less restrictive means" of curbing abuse because A) Plaintiff will be entitled to effective assistance of counsel, B) Plaintiff will be entitled to have the frivolousness of his lawsuit determined by a jury of his peers (which we will discuss in-depth in the next paragraph), and C) he will have the opportunity to confront his accusers through cross-examination.

9. Judges often explain that their rulings are not necessarily "corrupt" just because the losing party disagrees with them. Plaintiff would like for both Magistrate Judge Volpe and District Judge Holmes to answer this question: Does that work the other way around? Is a lawsuit necessarily frivolous simply because the judge disagrees with it?

10. The Western District certainly seems to think so, which is why Plaintiff is filing suit in this court instead of the Western District. For example, in Case No. 13-3068 in the Western District, the magistrate judge recommended that Plaintiff not be allowed to proceed on appeal *in forma pauperis*, for no other reason than, he personally found the case to be without merit. Even though the whole point of appealing a judgment was that you disagreed with it, he still felt that disagreeing with him was, in and of itself, enough to make it frivolous.

11. The U.S. Supreme Court has made a clear distinction between "frivolous" and merely "losing on the merits." See Neitzke v. Williams, 490 US 319 (1989). In that case law, the Supreme Court made a clear distinction between "failure to state a claim" and "frivolous."

12. Now, as far as instituting some financial incentive for Plaintiff to not file vexatious or frivolous lawsuits, Plaintiff is willing to have such a financial incentive from abusing the litigation system. He is willing to be subjected to a $50 refundable filing fee *SO LONG AS* the following safeguards are in place:

    (a) Any filing fees which are refundable in the event the Court determines that Plaintiff has substantially complied with Rule 11 must have appropriate safeguards so that the Court cannot refuse to refund Plaintiff's money if they simply disagree with the motion. In other words, safeguards to actually *enforce* Plaintiff's right, under *Neitzke*, that a lawsuit or motion is not frivolous simply because the Court disagrees with it.

    (b) Full accommodation of Plaintiff's rights when having his complaint reviewed, under

28 U. S. C. § 1915(d), to have ALL factual allegations be considered as true.

(c)     Full attention given to ALL of Plaintiff's legal arguments. This is another reason Plaintiff is filing in this court, rather than the Western District. Those guys have a history of simply ignoring Plaintiff's legal arguments, when they cannot refute them, and instead pretending like those arguments were never filed in the first place.

(d)     Full accommodation of Plaintiff's rights under Fed.R.Civ.P. 8(c). Specifically, his right to not have defenses raised, by the Court, *sua sponte*, on the Defendants' behalf. See Stephenson v. Davenport Community School Dist., 110 F. 3d 1303, 1306 (8th Cir. 1997) (footnote #3) (holding that affirmative defenses "must generally be pled or else [it] may be deemed waived"). The Defendants are on their own; if they do not plead and brief the Court on a defense, the Court cannot clean up their mess for them. This is yet another reason Plaintiff has stopped filing in that court.

(e)     An explanation, complete with specific findings of fact and conclusions of law, explaining the basis for each decision. That way, corrupt rulings will be much more difficult to cover up.

(f)     In issuing these explanations, always follow, even if you don't like it. Turn to persuasive precedent only if neither party can find any binding precedent.

13.     These demands are reasonable, and are only reflective of what the Court is already supposed to be doing in the first place (with the possible exception of sub-section (e), but not sub-section (f)). It's just ... the Western District didn't apparently get the memo on the "this is what you're supposed to be doing in the first place" part.

14.     If this Court is willing to accommodate Plaintiff's requests as listed in ¶ 12 of this Response, then by all means, serve Plaintiff with an order, promising to agree to those terms, and

granting Plaintiff's Motion for Leave to Proceed *In Forma Pauperis*, conditional upon Plaintiff's deposit of a refundable $50 filing fee within 30 days of the date Plaintiff receives the order.

15. Remember, Plaintiff said "of the date Plaintiff receives the order," not "30 days of the date of the order." Plaintiff asks that this Court obtain a tracking number for its mailing, because Plaintiff has learned that the Little Rock post office sucks; it consistently loses mail, delivers mail to the wrong address, delivered late, and all kinds of other forms of ball-dropping. There is a good chance that a first class mailing may get lost in the mail because of Little Rock's putrid mail service.

16. Of course, Plaintiff would much prefer it not impose any court access restrictions at all. Remember, there is no evidence that Plaintiff has filed lawsuits with intent to harass, except for the *number* of lawsuits, and binding precedent in the 8th Circuit says that is not good enough. Just because the Western District doesn't care about the Rule of Law doesn't make it a good idea.

/s/ David Stebbins

David Stebbins
123 W. Ridge St.,
APT D
Harrison, AR 72601
870-204-6516
stebbinsd@yahoo.com