UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF ARKANSAS
LITTLE ROCK DIVISION

DAVID A. STEBBINS     PLAINTIFF

VS     CASE NO. 4:15CV00436 JLH

JIMM HANNAH, DONNA GAY, STATE OF
ARKANSAS, ADMINISTRATIVE OFFICE OF
THE COURTS, RUSSELL ROGERS, DAVID D.
STEBBINS, JAMES GOLDIE, KRISTIE WILLIAMS,     DEFENDANTS
GORDON WEBB, BRAD KARREN, WES
BRADFORD, THE CITY OF HARRISON,
ROBERT TURLEY, JOSH APPLEGATE, &
ONE UNKNOWN-NAMED POLICE OFICER



## OBJECTION TO MAGISTRATE JUDGE'S REPORT & RECOMMENDATION OR IN THE ALTERNATIVE APPEAL TO DISTRICT COURT ON SAME

Comes now, *pro se* Plaintiff David Stebbins, who hereby submits the following Objection to the Magistrate Judge's Proposed Findings and Recommendations entered on September 23, 2015.

A. **ADA Claims Stemming from Plaintiff's Criminal Charges**

1. The magistrate judge asserts that Plaintiff has not alleged an insufficient injury because the threatened injury did not come to pass. He is wrong in this legal conclusion. The U.S. Supreme Court has already issued precedent to show that threatened injuries are sufficient to confer standing. See *Bantam Books, Inc. v. Sullivan*, 372 US 58, 68 (1963) ("People do not lightly disregard public officers' thinly veiled threats to institute criminal proceedings against them if they do not come around"). See also *Cross v. Mokwa*, 547 F. 3d 890, 905 (8th Cir. 2008) (citing Bantam, acknowledging that it "recogniz[ed that] a criminal prosecution may constitute an impermissible prior restraint on speech"). Therefore, despite the Magistrate Judge's recommendations, the U.S. Supreme Court has, indeed, held that threats of incarceration are,

indeed, sufficient to confer Title III standing, with or without accompanying performance.

2.  The Magistrate Judge also states that Plaintiff has failed to plead sufficient facts to support a claim of conspiracy. However, he does not state what essential elements Plaintiff must plead in order to state sufficient facts. How can Plaintiff be held responsible for knowing what the essential elements are, if the Court doesn't even know?

3.  Plaintiff has plead more than 60 pages worth of facts. Remember that, when screening a complaint for failure to state a claim, the Court must do two things: (1) assume all factual allegations to be true, and (2) view them in a light most favorable to the Plaintiff. See *Ashley County, Ark. v. Pfizer, Inc.*, 552 F. 3d 659 (8th Cir. 2009). It appears that the magistrate judge has NOT fulfilled the second one.

4.  Plaintiff has plead more than 60 pages worth of incidents. These incidents, despite the magistrate judge's final section in his Proposed Findings & recommendation (Doc. 25, p. 8), were never intended to be grouped together for the sake of avoiding the filing fee requirements. They were designed to show evidence a longstanding, consistent, pervasive, ongoing pattern of abuse and harassment. It is clear, from the *entirety* of the Complaint, that there is collaboration and cooperation among numerous government officials, attorneys at law, and private actors (such as David D. Stebbins) to systematically violate Plaintiff's rights on numerous occasions. Wes Bradford was only one participant; when he stepped down, others took his place. See *Crawford v. Van Buren County, Ark.*, 678 F. 3d 666, 669 (8th Cir. 2012) ("[L]iability may be established through proof that the alleged misconduct was so pervasive among the non-policy making employees of the municipality as to constitute a `custom or usage' with the force of law").

5.  Plaintiff will concede to one thing: He admits that he could have been a bit clearer on that point. However, such clarification is normally not required. For example, when a plaintiff

sues her employer for sexual harassment, she can list various acts of sexual harassment performed by different coworkers, and the Court will usually put two and two together and assume that she is alleging one giant pattern of harassment, not merely a collection of independent incidents.

6. The Court's confusion could possibly have stemmed from the fact that Plaintiff provided legal citation to show how each act was an individual violation. However, Plaintiff never intended for that to imply that these acts were all independent of one another. Plaintiff merely intended to communicate to the Court that these acts were still remediable, as a matter of law, even independently. Those legal arguments were presented as *alternative* theories for relief.

7. However, Plaintiff's failure to make his position clear does not hinder his right to recovery. Now that Plaintiff has clarified his position, the Court cannot in good faith dismiss this complaint unless these collective actions – all sixty-four pages of them – are insufficient to show a pattern of retaliatory action on the part of the government of the State of Arkansas. The question, therefore, is ... do they? Does the entire, 64-page complaint, sufficiently allege a plausible conspiracy of attempting to stop Plaintiff from seeking justice in the Courts?

8. The answer is, undeniably, yes.

9. Plaintiff's right to proceed on a conspiracy claim is governed by the precedent of *White v. McKinley*, 519 F. 3d 806 (8th Cir. 2008), which holds that a reasonable jury[1] could make a finding of conspiracy on as little as three (3) pieces of circumstantial evidence. Those pieces sufficient to create a minimally plausible claim for conspiracy are: (1) evidence that the Defendants and/or co-conspirators knew each other (bonus points if they already knew each other before the conspiracy began), (2) manipulation of the evidence scene (particularly the active suppression or

---

1 Remember: When a jury trial has been demanded, such as in this case, the standard for continuing is NOT whether the judge himself would have believed this evidence in a bench trial, but whether any jury of twelve regular people could imply such a conspiracy.

destruction of potentially relevant evidence), and (3) a common interest in having the plaintiff conspired against. See *id* at 816.

10. Plaintiff has alleged all three of these elements. First, because they are all government agents, it is easy to accept that they knew each other before they ever developed any mutual hatred of Plaintiff.

11. Second, Plaintiff has sufficiently plead enough facts to demonstrate that the government as a whole has an interest in silencing Plaintiff. Specifically, personal spite. Although they may have no *financial* interest in getting Plaintiff to stop using the Court's to legally seek justice against those who wrong him, they still do not like it. It is common knowledge that there always have been, and always will be, members of the human race who can't stand being disagreed with, who see dissent as the equivalent of insurrection. It is precisely because of these types of people that the Bill of Rights was created; in case those people ever manage to obtain positions of government, there are restrictions on their power. Well, in Boone County, a *majority* of the government is made up of these people, and unless they are stopped, they will not stop harassing Plaintiff on their own.

12. Last but not least, the suppression of potentially exculpatory evidence. It is indeed true that, with the exception of Kristie Williams' plainly exculpatory evidence Plaintiff has not alleged any specific instances of evidence suppression or destruction in this one case ... at least not yet. Again, Plaintiff will acknowledge, now that he has the luxury of hindsight, that he should have done so. However, there *are* instances of evidence destruction that Plaintiff can allege; he just forgot to do so. To remedy this, Plaintiff asks that the district judge afford Plaintiff an opportunity to file an amended complaint in this case. Off the top of his head, Plaintiff can think of two (2) instances where government agents and private citizens cooperating to suppress

and destroy potentially exculpatory evidence. The magistrate judge is only recommending dismissal without prejudice anyway; this way, the Court does not even have to open up a different case.

13.     Even if the Court will not allow Plaintiff to file an amended complaint, Plaintiff has still alleged more than enough facts to support a plausible claim of conspiracy. Specifically, the entire 64-page complaint shows a longstanding, government-wide pattern of animosity against Plaintiff that simply will not go away.

14.     The court, right now, is probably thinking "But what are the odds that all these acts are collectively tied together under one conspiracy?" Well, here is the evidence for that:

(a)     There is evidence of communication between the Defendants behind Plaintiff's back. See ¶¶ 62-65 of the Single Complaint. There is also plenty of evidence that Goldie had engaged in ex parte communications before this ... evidence which Plaintiff, once again, forgot to include in his single complaint. If the Court will grant Plaintiff's request for leave to file an amended complaint as listed above, he will include pleadings of these prior communications in the amended complaint.

(b)     The willingness of these officers to engage in such blatantly-illegal acts of misconduct clearly demonstrate a lack of fear of reprimand from their superiors. With the judges, perhaps you could argue that judicial immunity means that there will be no consequences, but remember that the entire complaint is meant to be read in its entirety, and you cannot make that argument for police, attorneys, or private citizens.

(c)     There is a clear cause-and-effect chain with 99% of these actions. For example, the police would have no reason to harass Plaintiff *unless* they were acting pursuant to Russel Rogers' defamatory advice. Meanwhile, Russel Rogers would have no reason to think

Plaintiff was homicidal *unless* he believed Plaintiff guilty of his criminal charges. Gordon Webb would have no need to issue a gag order to Plaintiff except to silence Plaintiff's political speech, Brad Karren would have no reason to bar Plaintiff's court access except to rid the government of what he considers to be a nuisance, and so on and so forth.

    i.    Please note that, even if the Court can think of other, hypothetical scenarios where these events could occur, that does not mean that Plaintiff's claim must fail. Plaintiff need only state a claim for relief that is plausible on its face, not one that eliminates every conceivable possibility except conspiracy. This is not a criminal case; the burden of proof is NOT "beyond a reasonable doubt," so please do not hold Plaintiff to that burden.

(d)    Speaking of Brad Karren, keep in mind that Plaintiff has he had his mind made up about the matter before the hearing even started. In other words, there is additional evidence of collaboration. Plaintiff will be willing to go into more detail in the event this Court allows an amended complaint to be filed.

15.    There is plenty of other evidence, besides those, that can easily be inferred by reading between the lines of Plaintiff's complaint. At this point, the Court can probably see where Plaintiff is going with this; Plaintiff asks the Court to follow binding precedent and construe Plaintiff's complaint in a light most favorable to him; if a reasonable jury *could*, if they wanted to, see a pattern of cooperation and retaliation among the government of Boone County, as well as the State of Arkansas, based on this evidence and any inferences they may draw from it, then Plaintiff has the right to proceed to service of process and discovery phase.

16.    Based on this evidence, a reasonable jury could very, very easily determine that the government has it out for Plaintiff. Remember that it is not a question of whether or not this Court would, itself, find in the Plaintiff's favor under the given evidence, but whether a

reasonable jury – ANY reasonable jury – could make a finding in Plaintiff's favor, and whether Plaintiff can prove any set of facts – ANY set of facts at all – that would entitle him to relief. See *Conley v. Gibson*, 355 US 41, 45-56 (1957) ("accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief").

17. Thus, the Magistrate Judge's Proposed Findings & Recommendations must be rejected.

### B. ADA Retaliation by Defendants James Goldie and David D. Stebbins

18. First, Plaintiff would like to remind the Court that this is both an individual claim for retaliation AND a part of the longstanding, government-wide conspiracy

19. Second, the Magistrate Judge has it plain wrong when he says "Absent actual injury, Plaintiff lacks Article III standing." Plaintiff has already refuted that in ¶ 1 of his Objection, the contents of which are hereby incorporated by reference. Again: The entire complaint needs to be read as one, giant complaint of a pattern of harassment and discrimination, just as much a collection of incidents.

20. Second, the motion was indeed granted. Although it is true that there is no separate order, on the record, titled "Order Granting Motion to Consider Restrictions on Court Access," it was still abundantly clear that Russel Rogers had sided with those men on that issue. See ¶¶ 59-61 of Plaintiff's Single Complaint. It is abundantly clear, based on the comment spoken of in that case, that if Rogers were forced to issue a formal ruling on that motion (e.g. via writ of mandamus), that ruling would have been "Granted." See, this is called "taking the hint," and it generally considered an important skill to have if you are doing detective work.

21. Third, the Magistrate Judge seems to think that Plaintiff is attempting to hold the David D. Stebbins and James E. Goldie to individual liability. This, much like his belief that the 2-

dozen claims are separate and not part of a large pattern of conspiracy, is a misunderstanding of Plaintiff's complaint.

22. Plaintiff asserts that David D. Stebbins engaged in the complained-about retaliation by acting in the same capacity as his attorney. As Plaintiff has already explained, clients are automatically held vicariously liable for the acts of their attorneys, because that's just the way our system of representative litigation is set up. Thus, if Goldie can be held liable for retaliation in violation of 42 USC § 12203, so can David D. Stebbins. The question, then, turns to whether Goldie's actions amounted to individual capacity retaliation. The answer is, undeniably, yes.

23. Goldie is an Attorney at Law. He was representing David D. Stebbins in his official capacity as an Attorney at Law.

24. Attorneys at Law are considered "officers of the court."

   (a) See http://www.americanbar.org/groups/public_education/resources/law_related_ education_network/how_courts_work/court_officers.html ("The lawyers for both sides are also officers of the court.").

   (b) See also http://dictionary.law.com/default.aspx?selected=1385 ("As officers of the court lawyers have an absolute ethical duty to tell judges the truth").

   (c) See also http://legal-dictionary.thefreedictionary.com/officer+of+the+court ("**officer of the court** n. any person who has an obligation to promote justice and effective operation of the judicial system, including ... the attorneys who appear in court").

25. As such, any act taken by James E. Goldie in his capacity as an Attorney at Law is subject to regulation under Title II of the ADA, just as much as any clerk, bailiff, or court reporter.

26. It is in THAT capacity, not individual capacity, that Goldie (and, by proxy, David D.

Stebbins) is being sued for retaliation. As such, Plaintiff has undeniably stated facts upon which relief can be granted.

27. This legal argument is consistent with the persuasive precedents offered by the magistrate judge. Both the 2nd Circuit and 4th Circuit cases base their rulings on the fact that 42 USC § 12203(c) only provides for remedies identical to an equivalent act of original discrimination, depending on whether the defendant was an employer, state or local government, or privately-owned place of public accommodation. Here, the remedies for Goldie's retaliation should be identical to the remedies for Karren's, Rogers, or Bradford's retaliation, assuming there is no immunity from suit and Plaintiff otherwise states a plausible claim. Since the magistrate judge appears to concede that Plaintiff would be entitled to relief under 42 USC § 12133 in those cases, but for the issues of immunity and/or failure to state a claim, they are equally applicable here.

### C. ADA Claims against Russell Rogers, Brad Karren, the State of Arkansas, Administrative Office of the Courts, Jim Hannah, and Donna Gay

28. This is easily the most ridiculous of the magistrate judge's recommendations. First, he completely ignores Plaintiff's assertions that Karren issued his sanctions in the complete absence of all jurisdiction. See ¶¶ 83-91 of the Single Complaint. Even the magistrate judge himself admitted that judicial immunity is lost when the acts are committed in the clear absence of all jurisdiction, when he cited the precedent of *Mireles v. Waco*. He ignored Plaintiff's legal arguments in that sub-section of the complaint because he could not find a grounds to refute it.

29. Concerning the act taken in the complete absence of all jurisdiction, Plaintiff has alleged sufficient facts to show that the act is also a violation of 42 USC § 12203. Plaintiff enunciated this evidence in ¶¶ 126-131 of the Single Complaint, but here they are again, for the Court's convenience:

(a)     Brad Karren obviously knew of Plaintiff's litigation history. He openly admitted to having independently investigated the facts of the matter (see ¶ 86 of the Single Complaint). He only admitted to having looked up Case No. 12-3022 in the Western District. This was still unethical of him, as judges are not supposed to independently investigate the facts of the matter. But even nothwithstanding that, even if that case was the only case he actually looked up, that case still contained numerous statements from both parties which explained Plaintiff's total litigation history. As such, even if he only reviewed that one case, he still knew of Plaintiff's statutorily protected activities.

(b)     He the proceeded to invoke what is supposed to be a drastic remedy: Prospective restrictions on court access that are to be enforced by the Clerk, rather than the judge.

(c)     It is a matter of common knowledge (at least in legal circles) that judges do not invoke this drastic remedy in light of only a single case, no matter how frivolous that one case is. They usually require a pattern of such cases before they resort to such an extraordinary remedy. See *In re McDonald*, 489 US 180, 180 (1989) ("Petitioner is no stranger to us. Since 1971, he has made 73 separate filings with the Court"); see also *In re Sindram*, 498 US 177, 177 (1991) ("Petitioner is no stranger to this Court. In the last three years, he has filed 43 separate petitions and motions"); see also *In re Tyler*, 839 F. 2d 1290, 1291 (8th Cir. 1988) ("Since January 1, 1986 Mr. Tyler has filed 113 cases in this court in his own name as petitioner or plaintiff"); see also *Washington v. Alaimo*, 934 F. Supp. 1395 (1996) (citing a large number of patently frivolous filings, each one of which whose frivolousness far exceed anything one could even arguably accuse Plaintiff of, before prospective restrictions were put in place); see also 28 USC § 1915(g) (not only requiring a minimum of thee (3) frivolous cases before prospective restrictions can be entered, but also

requiring that plaintiff already be incarcerated before the minimum even goes that low!).

(d)     As such, the odds are 99.9999999% that Karren was considering the entirety of Plaintiff's litigation history (which includes the statutorily protected activities) when he did what he did. Even if Karren attempts to assert, in his Answer to Complaint, that Plaintiff's overall litigation history was not a factor in his decision, he would have little to no plausibility to his denial, for the aforementioned reason. The burden of proof would practically shift to Karren in the first instance, by reason of the fact that denying that Plaintiff's statutorily protected activities played a role in his decision is so astronomical that it triggers the precedent of *Matsushita v. Zenith*, 475 US 574 (1986):

> "the issue of fact must be 'genuine.' When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *id* at 586 (internal citations omitted)

> "[I]f the factual context renders respondents' claim implausible — if the claim is one that simply makes no economic sense — respondents must come forward with more persuasive evidence to support their claim than would otherwise be necessary." *id* at 587).

30.     As such, Plaintiff has demonstrated sufficient facts, in his Single Complaint, to support a plausible inference of retaliation when Karren issued the rulings he did.

31.     The magistrate judge is also incorrect in saying that Karren's actions were judicial in nature. He cites the precedent of *in re Tyler*, but that precedent never stated that the court's actions were judicial in nature, only that the court, in that case, acted *within his discretion*. Just because an act is discretionary does NOT automatically make it judicial; see Forrester v. White, 484 US 219 (1988) (holding that personnel decisions – which are inherently discretionary – are nevertheless not protected by judicial immunity). Even Clerks sometimes have discretion in their functions; a good example would be appellate court clerks deciding whether to grant or deny

motions for extensions of time to file appellate briefs, and/or deciding whether or not to accept and file supplemental briefs after the main briefs have already been submitted. However, Clerks are undeniably considered "administrative" court officers, and thus, are not protected by judicial immunity.

32. As a result, the magistrate judge's reliance on the precedent of *in re Tyler* is misplaced. The Eighth Circuit was upholding that the District Court was justified in what it did in that one instance; that was a ruling on the merits. It does not state whether or not a judge would be protected by judicial immunity if an aggrieved litigant wanted to challenge the court's decisions using that avenue, rather than through appeal.

33. Next, the magistrate judge says that the State of Arkansas, Administrative Office of the Courts, Jim Hannah, and Donna Gay should all be immune from suit for two reasons: (1) They didn't do anything other than assign the special judges, and (2) allowing the state to be held liable for the actions of her judges, when those judges should be immune from suit, would effectively nullify judicial immunity altogether.

34. The magistrate judge speaks as if this is a novel issue of law. It is not. The case of *Tennessee v. Lane* has already declared that a State is liable (and not immune from suit) for any state-inflicted injuries suffered as a result of any disability, even if the individual judges who inflicted the injury are protected by judicial immunity. How can they possibly have found otherwise when one of the injuries complained about was being held in contempt of court?

35. If the Court wants case law citation to prove that Plaintiff's interpretation of *Tennessee v. Lane* is accurate, here is some persuasive precedent for you (most of these are unpublished; half of them are simply deciding whether to allow an IFP plaintiff to proceed with the action, but then again, that's where we are right now in this case, and so it is appropriate that these be cited):

- *Phillips v. NH Circuit Court* (unpublished), Civil No. 13-cv-313-JL. in the U.S. District Court, District of New Hampshire. You can view this case for free, without having to pay a Pacer fee, by going to the following webpage: https://scholar.google.com/scholar_case?case=13644289459312859430 (if the Court is having trouble entering this or any other weblink and finding the case in question, feel free to contact Plaintiff at the email address listed at the signature of this Objection, and Plaintiff will respond, giving the Court a link it can click on, or at the very least, copy and paste).

- *Reed v. State of Illinois*, Case No. 12-7274 in the U.S. District Court for the Nothern Dist. of Illinois (dismissing for failure to state a claim, but NOT for state judicial immunity). You can view this case for free, without having to pay a Pacer fee, by going to the following webpage:
https://scholar.google.com/scholar_case?case=12977905413202208

- *Prakel v. State of Indiana*, Case No. 4:12-cv-00045-SEB-WGH, U.S. District Court, S.D. Indiana, Doc. 118, filed 03/30/2015 (oder denying in part Motion for Summary Judgment). You can view this case for free, without having to pay a Pacer fee, by going to the following webpage:
http://indianalawblog.com/documents/Doc%20No%20118%20--%20order%20on%20SJ.pdf

- *Guttman v. Khalsa*, 669 F. 3d 1101 (10th Cir. 2012).

36. In Guttman, although the Court still determined that New Mexico enjoyed 11th Amendment immunity from suit in that one case, it did so by enunciated a standard to determine whether 42 USC § 12202 was a valid exercise of Congress' power under § 5 of the 14th Amen-

dment. The Court determined that it was not *in that case*, but only because that one case failed to meet a standard that is clearly met in *this case*: The 10th Circuit enunciated a two-prong test:

(a) Is there a long pattern of discrimination? *Id* at 1112. Plaintiff has, without doubt, sufficiently plead this prong. See ¶¶ 2-17 of this Objection.

(b) Is a fundamental right implicated? Since *Tennessee v. Lane* has already held that "access to the courts" is one such fundamental right, the Guttman court admitted that its hands would tied on that issue, if such issue ever came before them (see *id* at 1120: "*Lane* identified a narrow category of state action that focused the analysis on a specific individual right—the right of access to the courts"). However, since that case did not involve court access, they ruled that 11th Amendment immunity applies; here, it does not apply, because this case DOES involve court access.

37. The magistrate judge cites the risk of side-stepping judicial immunity because aggrieved citizens could simply lash out against the entire state rather than individual judges. A similar fear was enunciated by the DC Circuit Court of Appeals in the case of *Sindram v. Suda*, 986 F. 2d 1459 (DC Cir. 1993), before that precedent got overturned a few months later by the case of *Antoine v. Byers & Anderson, Inc.*, 508 US 429 (1993).

38. The magistrate judge's fears might have been well-taken … if the decision had not already been made for him, as described above, with *Tennessee v. Lane*. Just like how *Sindram v. Suda* was overturned by *Antoine v. Byers & Anderson*, so too has this Court's legal conclusions been overturned by the case of *Tennessee v. Lane*. Sure, there will be some judges who think that precedent is wrong; indeed, the Supreme Court granted Certiorari in that case in the first place to resolve a circuit split, meaning there was a disagreement among the federal appellate courts to begin with. But when the Supreme Court issues a ruling, all other federal courts are required to

follow that ruling, like it or not. It's called the "Rule of Law," and it has served our country well for centuries.

39.     Besides, as a matter of fact, the magistrate judge's fears are grossly disproportionate to the evidence to support them. The ability to sue the State is only applicable in ADA cases, and other statutes where Congress has expressly abrogated 11th Amendment immunity. The State would still retain its 11th Amendment immunity in § 1983 cases, which easily make up 99% of the cases where citizens allege deprivation of constitutional rights. As long as Congress does not abrogate 11th Amendment immunity except for exceptional circumstances in the future, the type of cases (and, by proxy, the number) where the State risks becoming their judges' whipping boy[2] are sure to be few and far between. As long as the State maintains a thorough anti-discrimination policy (like what Plaintiff is asking for in ¶ 200 of the Single Complaint), instances where the State of Arkansas will become her judges' whipping boy will be few and far between. You have nothing to be afraid of.

40.     The magistrate judge also states that "Plaintiff does not, however, allege the State of Arkansas or AAOC committed any wrongdoing other than employing these judges."

41.     First off, let's address how ridiculous the magistrate judge's finding is, as a matter of fact. The magistrate judge says that the State of Arkansas has done nothing other than employ the offending judges. ***DUH!*** Plaintiff asks ... what in the name of all things holy is the State of Arkansas, herself, supposed to do except employ people? Much like a corporation, the State of Arkansas has no corporeal body to do things with; unlike the king of Medieval England, she is

---

2    By "whipping boy," Plaintiff means a person or entity who endures punishment for another's transgressions, especially when punishing the original transgressor is not an option. In Medieval England, whipping boys were the Prince's best friend, who were "whipped" (hence the name) by their tutor instead of the Prince, due to a belief that, because of the Prince's royal blood, only the King himself had privilege to lay hands on him. Since the King was rarely around to punish his son when necessary, they whipped the Prince's best friend instead, to make the Prince feel sorry for his transgressions.

*physically incapable* of acting on her own. Just like with the concept of corporate personhood, every act she takes – from the most routine of tax collections to the most extraordinary of declarations of war – must be done by *human* employees with opposable thumbs.

42. So, when a judge acts on behalf of the State of Arkansas, his acts *are* the acts of the State of Arkansas, just like when a chairman of the board acts on behalf of his company, his acts *are* the acts of his company. The two actors are literally one in the same.

43. So, as a matter of fact, the magistrate judge says that the State of Arkansas has committed no wrongdoing (or rightdoing, for that matter) beyond employing the judges. Well, thank you, Captain Obvious!

44. Second, as a matter of law, he fails to show any legal authority showing that Plaintiff is even required to show more than this in the first place.

45. Section 502 of the ADA clearly states that a State government is to be held liable the same extent as any other private entity. Thus, we must ask ourselves "To what extent would a private entity be held liable for the acts of its employees?" If you have even so much as taken a "Legal Environment of Business" class in your first semester of college, let alone earned a full-fledged law degree, you know that the answer to that question is "all the way." If a private employer were sued for sexual harassment, the Court would not dismiss the complaint on the grounds that no one in management ever participated in the harassment. Merely *employing* co-workers who perpetrated the harassment is sufficient to bestow vicarious liability. In the case of private employers, this is known as "respondiat superior."

46. Remember that the doctrine of requiring an unconstitutional policy or custom before governments can be liable for the acts of their officers was created **as an exception to sovereign immunity**; see *Monell v. New York City Dept. of Social Servs.*, 436 US 658 (1978). If there is no

sovereign immunity to be begin with, then the common law doctrine of "respondiat superior" applies to the same extent it would a private corporation. This requires the State of Arkansas to be held vicariously liable, as the persuasive precedents Plaintiff produced above clearly demonstrate. Just like a private, for-profit corporation, if the State does not want to be liable for discrimination or retaliation, all they have to do is ... stop employing men who commit discrimination. If a private organization can do it, so can the State; but there is a big difference between being unable to do something and not wanting to do it.

47. All the State has to do is implement – and actually *enforce* – a policy of punishing state employees for intentional acts of discrimination or retaliation, and reversing any acts of discrimination or retaliation, intentional or otherwise. Maybe not a civil suit for damages, but *something*; perhaps an upgrade to the JDDC's authority, allowing the JDDC to discipline judges for acts of discrimination or retaliation, would accomplish this goal.

48. The several states of this nation have had 25 years of notice that they are required to follow Title II of the ADA, and eleven years notice that their lack of sovereign immunity is NOT unconstitutional. If they have not implemented such a policy by now, they have no one to blame but themselves for failing to do so. They should not be sympathized with for their failure to get with the program a quarter century in the making.

49. In light of all of this, the magistrate judge's recommendation must not be adopted.

### D. Plaintiff's Remaining Claims

50. Plaintiff intended for all the remaining claims to be taken as one giant pattern of harassment and retaliation, in addition to independent claims. However, to play devil's advocate for a minute, even assuming, for the sake of argument, that these claims are indeed not related to each other, let's address the magistrate judge's issue from there.

51.     First and foremost, keep in mind that Plaintiff has already paid a bond. The magistrate judge asks that the ENTIRE case be dismissed, but he has not issued an opinion on the merits of all of Plaintiff's claims. Even if the three sections, before this one, convince the district judge that those claims should be dismissed, Plaintiff should still be entitled to proceed on at least one cause of action under this case number, unless ALL of them fail to state a claim.

52.     Next up, the magistrate judge accuses Plaintiff of attempting to "defeat filing fee requirements." Assuming, for the sake of argument, that this is what Plaintiff was trying to do (which it was not, as Plaintiff has referred to constantly throughout this objection), the question then turns to ... are Plaintiff's intentions justified?

53.     Recall that District Judge Holmes had already sided, at least in part, with Plaintiff on the issue of whether being able to post the entire $200 bond at once would deprive Plaintiff of groceries. As a result, the District Court has already agreed with Plaintiff that $200 is the absolute maximum that Plaintiff can afford to pay at one time.

54.     So, if this section of the magistrate judge's recommendation were to be adopted by the district court, and Plaintiff were required to post a separate $200 bond for each case, then that really would financially bar Plaintiff from court access, and that is not allowed; see *in re Tyler, supra* at 1294 (holding that financial restrictions which *de facto* provide a financial bar to court access altogether are unconstitutional).

55.     As a result, if this Court insisted on rigidly adhering to its policy of only related transactions being grouped in one case, then that means that the Court would have to hold Plaintiff to a collection of bonds no greater than $200 in total. At that point, you might as well just grant Plaintiff total *in forma pauperis* status, no bond no nothing. The relief of burden on the taxpayers would be negligible, anyway.

56. Assuming that Plaintiff were just trying to group separate cases together to lessen the filing fee (which he is not), Plaintiff's unique financial situation would justify him doing it. It's called "extenuating circumstances." Perhaps the Court has heard of the term.

### E. The ex parte communications and perjuries committed by James E. Goldie and David D. Stebbins

57. Even if the above argument does not persuade the Court, the magistrate judge should still be forced to enter an opinion on the claims of ex parte communications and perjury. Kristie Williams works out of (and, by proxy, most likely lives in) Stuttgart, Arkansas, which is located in Arkansas County. As a result, she is squarely within the personal jurisdiction of the Eastern District of Arkansas.

58. Goldie and David D. Stebbins are her accomplices in the ex parte communications, so they can be properly brought before this Court under supplemental jurisdiction, even if ALL of the underlying claims are not sufficiently related to each other as explained in ¶¶ 2-17 of this Objection.

59. The perjuries committed by Goldie and David D. Stebbins should also be included in this Court's supplemental jurisdiction, because even if this Court does not believe that the entire, 64-page complaint is sufficient to support an inference of a single, sweeping, common goal of persecuting Plaintiff in violation of 42 USC § 12203, it is abundantly clear that the ex parte communications and perjuries all fell squarely within another common goal: Screwing Plaintiff out of a state court victory he justly deserved and was legally entitled to[3]. Therefore, those claims are still properly before the Court in the underlying action, and the magistrate judge needs to be ordered to rule on them.

---

[3] To remind the court, David D. Stebbins openly admitted to nearly all the underlying facts. If the defense attorney had not used ex parte communications to make the judge biased, Plaintiff should have been entitled to summary judgment or directed verdict, per the precedent of Spink v. Mourton, 362 SW 2d 665, 667 (1962).

## CONCLUSION

60. In conclusion, the magistrate judge's recommendation is based on a lazy assessment of the Complaint, plainly incorrect legal conclusions, and a desire to protect his comrades. His recommendation should be rejected and Plaintiff should be allowed to proceed with this case.

61. Wherefore, premises considered, Plaintiff respectfully prays that this Court reject the magistrate judge's proposed findings of fact and recommendations. So requested on this, the 2nd day of October, 2015.

David Stebbins
123 W. Ridge St.,
APT D
Harrison, AR 72601
870-204-6516
stebbinsd@yahoo.coms