UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF ARKANSAS
LITTLE ROCK DIVISION

DAVID A. STEBBINS                                          PLAINTIFF

VS                         CASE NO. 4:15CV00436 JLH

JIMM HANNAH, DONNA GAY, STATE OF
ARKANSAS, ADMINISTRATIVE OFFICE OF
THE COURTS, RUSSELL ROGERS, DAVID D.
STEBBINS, JAMES GOLDIE, KRISTIE WILLIAMS,       DEFENDANTS
GORDON WEBB, BRAD KARREN, WES
BRADFORD, THE CITY OF HARRISON,
ROBERT TURLEY, JOSH APPLEGATE, &
ONE UNKNOWN-NAMED POLICE OFICER

## MOTION AND INCORPORATED BRIEF IN SUPPORT THEREOF
## FOR APPOINT OF COUNSEL

Comes now, *pro se* Plaintiff David Stebbins, who hereby submits the following motion for the Court to appoint counsel to him, pursuant to 28 USC § 1915(e)(1), so that, when Plaintiff re-files his claims, he will not make whatever mistake he purportedly made in this case that got it dismissed.

1. Before we continue, let's get one thing out of the way: Yes, there *is* a reason this motion is being filed now, instead of when the cases get re-filed.

2. The claims were only dismissed without prejudice. This means that Plaintiff can refile them again.

3. When he does so, he asks that he be appointed counsel.

4. His right to appointed counsel is governed by the precedent of *Slaughter v. City of Maplewood*, 731 F. 2d 587 (8th Cir. 1984). In Plaintiff's Motion for Reconsideration or in the Alternative for Advisory Opinion, Plaintiff cited that precedent for the portion where it overturned the District Court decision when it gave no explanation whatsoever (see ¶ 2(c) of that

motion), and that precedent is still very much alive in this motion. Remember: If the Court wishes to deny this motion, it must have state grounds for said ruling, otherwise the Court of Appeals will reverse the decision automatically.

5.   However, that precedent also listed the criteria for when appointment of counsel is required. Specifically, the precedents states thusly:

> "The decision to deny the assistance of an appointed attorney to a layman unschooled in the law in an area as complicated as the civil rights field is truly too important to be deferred until a resolution on the merits can be had. Such an individual likely has little hope of successfully prosecuting his case to a final resolution of the merits.
>
> The effectiveness of appellate review will be seriously impaired by the nature of the order. A civil rights litigant, untrained in the law, may well decide he is incapable of handling the trial and drop his claim, commence trial but be compelled to abandon his efforts prior to final judgment, fail on a technicality in any attempt to appeal should an adverse final judgment on the merits ever be reached, or fail, for lack of legal knowledge, to make the requisite showing to obtain reversal."

6.   Plaintiff's current dilemma is a civil rights issue, as well. It is disability-related rather than race-related, but it is a civil rights issue nonetheless.

7.   The question, then, turns to whether Plaintiff can adequately represent himself in the proceedings. Plaintiff believes that it is apparent that he cannot.

8.   First, because this case was dismissed *without prejudice*, for failure to state a claim, that obviously means the Court has made the following findings: (A) Plaintiff could, potentially, have a cause of action, but he needs to plead his facts sufficiently, and (B) Plaintiff has some sort of deficiency in his pleading style that makes it confusing for the Court.

9.   Second, Plaintiff has indeed been advised, by multiple attorneys, that his cause of action is indeed just. He only represents himself out of financial inability to retain counsel, not the fact that he does not want one.

(a)     First, when Plaintiff's criminal charges were pending, his public defender agreed with Plaintiff that there was plenty of evidence to support Plaintiff's primary defense on the merits – that he was framed by the alleged victim, specifically so that the government could harass him. She was preparing a defense for Plaintiff based on that defense, something she would not have been allowed to do, under Arkansas' rules of attorney ethics, if she felt the defense lacked legal merit of evidence support. Ultimately, it did not HAVE to come to that, as the prosecutor eventually realized that his evidence against Plaintiff was shabby at best, and clearly reaked of corruption at worst[1], and offered a plea bargain that called for the dismissal of Plaintiff's claims. However, the fact that an attorney was actually taking Plaintiff's "conspiracy" defense seriously should go to show how much potential merit his claim has.

(b)     Second, Plaintiff spoke, over the phone, with a Fort Smith-based attorney called Jason Vaughn. He agreed to look at Plaintiff's complaint in Case No. 4:14-cv-227-KGB, which alleged similar claims, but was also dismissed *without prejudice*, allowing Plaintiff to raise them yet again. When Plaintiff called him back a few weeks later, Vaughn openly admitted that Plaintiff's complaint was indeed valid.

10.    Plaintiff could show proof of those two claims in ¶¶ 8(a) & 8(b), but he is afraid of how he can do so without waiving the attorney-client privilege. If either the Court, or the appointed counsel, can think of a way to do so without losing his confidentiality rights, Plaintiff would very much be willing to show evidence of those two allegations.

11.    Remember that it is part of an attorney's job to hear a client's plight, in laymen's terms, and then translate those claims into legalese, while the Court's job is to simply take every pleading at face value. This may explain why this court is so unsympathetic to Plaintiff's

---

[1] A realization that very easily could have been attributed to Plaintiff's evidence as translated by a trained attorney, showing all the more evidence that Plaintiff indeed has a colorable cause of action, if only he had a means of communicating it.

attempts to explain himself.

12. Thus, Plaintiff has demonstrated a likelihood of stating a plausible claim, if he can get an attorney to do it for him.

13. Third and finally, Plaintiff's inability to adequately communicate his complaint could very easily be attributed to his Asperger Syndrome (a social disorder that makes, among other things, makes it difficult for Plaintiff to adequately communicate his thoughts in a succinct, yet tactful manner), which Plaintiff has discussed in detail in this and other cases. Appointing an attorney to translate Plaintiff's pleadings into legalese could be seen as nothing more than the equivalent of appointing a sign language expert for a deaf person, or a translator for a person who doesn't speak English. Since Plaintiff clearly has the ability to do legal research and to understand legal terminology (even if he may or may not be unskilled in reciting it), he can certainly assist his appointed counsel in the preparation of his case.

14. As far as Plaintiff's ability to adequately state the facts are concerned, the case of *Rayes v. Johnson*, 969 F. 2d 700 (8th Cir. 1992) is instructive. When a pro se complaint failed to allege, with sufficient particularity, that the complained-about actions were intentional and malicious, the Court realized that appointed counsel would likely solve the problem. Counsel was appointed, and amended complaint was filed, and the Court did indeed subsequently find that the complaint was sufficiently plead a that point. See *id* at 701.

15. In addition, the Eighth Circuit also held that subsequent appointment of counsel was necessary[2], issuing the following binding precedent:

> "The appointment of counsel should be given serious consideration if the plaintiff has not alleged a frivolous or malicious claim ... The court must also ascertain the plaintiff's need for an attorney and his inability to obtain counsel on his own. The inquiry regarding the plaintiff's need should focus on several factors, including the

---

2  The whole point of that appeal was that, when the initially appointed counsel asked to withdraw due to irreconcilable differences, the Court refused to appoint replacement counsel.

      likelihood that the plaintiff and the court will benefit from the assistance of counsel, the factual complexity of the case, the plaintiff's ability to investigate the facts and present his claim, the existence of conflicting testimony, and the complexity of the legal issues."

16.    Nearly every one of the criteria listed in that precedent are either in Plaintiff's favor in this case, or are not applicable in the first instance, for better or worse.

    (a)    **Inability of the Plaintiff to obtain counsel on his own** – Indeed, Plaintiff cannot obtain counsel on his own. His Application for Leave to Proceed *In Forma Pauperis* makes this abundantly clear.

    (b)    **Likelihood of the benefit of assistance of counsel** – As Plaintiff has clearly demonstrated, his ability to present his case hinges largely on his ability to communicate his thoughts clearly. Without question, an appointed attorney can help with that.

    (c)    **Complexity of the Case** – Since this criterion is listed separately from "complexity of legal issues," Plaintiff will assume that this criterion means complexity of the factual basis for the case. With that assumption in mind, Plaintiff asserts that discrimination claims are inherently complex, as evidenced by the fact that most discrimination attorneys who represent clients on an hourly basis often charge retainers of around $10,000, an astronomical amount for a mere retainer fee, even by "lawyer" standards. In addition, Plaintiff is complaining that all the named Defendants were working together to collectively violate Plaintiff's rights, an accusation which increases the factual complexity of the case, exponentially.

    (d)    **Plaintiff's ability to investigate & present** – Again, Plaintiff's poor written communication skills have clearly demonstrated that this is in Plaintiff's favor.

    (e)    **Existence of conflicting testimony** – It is unclear what the Court of Appeals means by this. If they are referring to conflicting witness testimony as to the relevant facts, then this

is not applicable in the first instance at this stage of the litigation, nor was it in *Rayes*. As such, Plaintiff will not address this criterion.

(f) **Complexity of legal issues** – Again, the fact that attorneys in this area of law routinely charge $10,000, just for a retainer, shows that the law surrounding this matter is excessively complex.

17. So, as this Court can see, while the Court may not be *required*, per se, to appoint counsel, it is clear, at this point, that it would be in the best interests of justice, and the American taxpayers, if it went ahead and did so.

18. Plaintiff asks that this attorney be appointed *before* re re-files the cases. This is the main reason why he is making this motion in this case, instead of the case he actually would be using the appointed counsel in (Remember, in ¶ 1 of this Motion, Plaintiff promised to have an explanation for this). This helps to maximize the chances that Plaintiff's next complaint will even make it past the "complaint" stage of litigation in the first place. Plaintiff could, theoretically, wait until that case gets filed. However, if that happened, there is the risk of Plaintiff's complaint being dismissed, just as it was here, due to the very lack of communication skills that necessitate the appointment of counsel in the first place. It would be a Catch-22; Plaintiff wouldn't be able to get counsel until his complaint was deemed sufficient, but he needs counsel to get that far. To prevent this Catch-22, Plaintiff asks this Court to appoint counsel *before* the new case even gets filed.

19. Plaintiff asks that the appointed counsel meet the following criteria:

(a) Has a history of working with people with Asperger Syndrome. This would minimize the risk of Plaintiff and the appointed counsel not getting along, and the counsel moving to withdraw, like Boggy did in *Rayes*.

(b) Either lives in the Harrison area, is willing to come to Plaintiff for consultations, or is willing to hold consultations with webcam. Obviously, what good is having an attorney if Plaintiff cannot adequately communicate with him/her on a regular basis?

(c) Though not a demand, Plaintiff would greatly appreciate if the attorney were willing to email him copies of every new development in the case, to save Plaintiff the cost of viewing them on Pacer. He also would greatly appreciate being kept abreast of every development in the case, including discovery and non-privileged counselor discussions, regardless of whether they are "on the record" or not.

20. Hopefully, granting this motion will eliminate any confusion of issues or inability to adequately plead Plaintiff's claims, just like it did with *Rayes*.

Wherefore, premises considered, Plaintiff hereby requests that an attorney be appointed to represent him in the upcoming action. So requested on this, the 19th day of October, 2015.

David Stebbins
123 W. Ridge St.,
APT D
Harrison, AR 72601
870-204-6516
stebbinsd@yahoo.com